William H. Poorman, Plaintiff-Appellant, v. Walter R. Julian, and Collins Y. Sundberg, Defendants-Appellees.

Gen. No. 11,281.

Second District, Second Division.

July 16, 1959.

Released for publication August 4, 1959.

Large, Reno, Zahm & Folgate, of Rockford (Ralph S. Zahm and Robert K. Skolrood, of counsel) for plaintiff-appellant.

Foltz, Haye & Keegan, and Pedderson, Menzimer & Conde, all of Rockford (Frederick H. Haye and L. W. Menzimer, of counsel) for defendants-appellees.

JUSTICE CROW delivered the opinion of the court. This is a controversy between the plaintiff-appellant William H. Poorman, and the defendants-appellees

Walter R. Julian and Collins Y. Sundberg, all of Rockford, in which the plaintiff is seeking by his complaint, as amended, in equity, to restrain the defendants from using the name "Julian" in association with or in any way connected with the conduct of any undertaking or funeral home business, or in connection with any business owned or conducted by the defendants or either of them which competes with the business of the plaintiff. The complaint, as amended, was dismissed, on the motions of the defendants, and, the plaintiff having elected to stand by the complaint as amended, a final judgment was entered in favor of the defendants and against the plaintiff, and the plaintiff appeals.

The complaint, as amended, filed September 24, 1958, charges substantially as follows, that on and prior to November 9, 1949, the plaintiff William H. Poorman, one Ira T. Dougherty, and the defendant Walter R. Julian, owned and operated an undertaking business as co-partners under the name of McAllister-Julian-Poorman in Rockford. The defendant Julian also owned, alone, the real estate upon which the business was conducted. On November 9, 1949, the plaintiff Poorman entered into an agreement with the defendant Julian entitled "Agreement to Sell Business, —Real Estate Option," by the terms of which Julian agreed to sell to Poorman all of his, Julian's, right, title, and interest in and to such business, including the chattel property thereof, its good will, and all of Julian's "rights to the use of the name 'McAllister-Julian-Poorman' or any one name or combination thereof," for the sum of $15,000. It was further agreed therein that Julian would refrain from engaging in such business within twenty-five miles of the firm's place of business for five years. The transaction was to be closed on or before January 1, 1950. Included in the Agreement of November 9, 1949 was an option from Julian to Poorman to purchase the real estate

upon certain terms. The transaction was completed on December 30, 1949, at which time Julian executed and delivered a bill of sale to Poorman, the agreed purchase price was paid by Poorman, and they executed an addendum to the Agreement of November 9, 1949 (the addendum relating to other matters). Poorman, meanwhile, had acquired Dougherty's interest in the undertaking firm, and thereafter Poorman alone has conducted the business under the name of "Julian-Poorman Funeral Home" and still continues to do so, utilizing substantial assets in doing so. He has advertised his business under that name, expending large sums for that purpose, and continues to do so. So far as is indicated by the complaint the defendant Walter R. Julian apparently refrained from entering into the undertaking business for five years from November 9, 1949, in accordance with the agreement. Evidently some time after the expiration of that five-year period, so far as appears from the complaint, the defendant Walter R. Julian and the defendant Collins Y. Sundberg, another funeral director in Rockford, who did business as "Sundberg Funeral Home," proceeded to use the name "Walter R. Julian" in certain advertisements of the defendant Sundberg's business. It is alleged that they have advertised Walter R. Julian as an associate of Sundberg in that undertaking business, through the medium of ads in daily papers published in Rockford, and in the telephone directory of that city. Copies of certain sample pages from the telephone directory are attached as exhibits to the complaint, from which it appears that in the yellow or classified section "Julian, Walter R." is listed under "Funeral Directors" and in a display box ad immediately thereunder appears "associated with The Sundberg Funeral Home," giving the address and phone number, and in the regular part of the directory "Julian, Walter R." is listed in bold face type, at an address

211

which is alleged to be that of The Sundberg Funeral Home, though that particular fact does not appear at that point in the regular part of the directory. A copy of a newspaper ad is also attached as an exhibit to the complaint in which appears "Sundberg Home for Funerals" in large bold face type and in smaller type thereunder, below the address and phone number, is "Collins Y. Sundberg, Walter R. Julian." It is alleged that the plaintiff is suffering irreparable damages, and that he has no adequate remedy at law.

The defendants in their motions to dismiss, as amended, assert that five years have expired from the effective date of the sale; that any restriction on the use of the name "Julian" or any part thereof in the undertaking business has expired; that there is no restraint at all on Walter R. Julian using his own name in the undertaking business, or none after five years from the date of the contract; that the defendants are not and have not been using the name "McAllister-Julian-Poorman, or any one name or combination thereof"; that if the restriction on the right of Julian to use his own name in the business is not limited to five years the contract is void as unreasonable in point of time, contrary to public policy, causes undue hardship to the promisor, the restraint is greater than necessary to protect the promisee, and would be contrary to Ch. 111½, Ill. Rev. Stats., 1957, par. 73.8a, relating to funeral directors.

The Agreement to Sell Business—Real Estate Option of November 9, 1949 between the plaintiff Poorman, as the Buyer, and the defendant Julian, as the Seller, an alleged copy of which is attached as an exhibit to the complaint, provided in paragraph 1, as follows, so far as material:

"1. Seller agrees to sell by good and sufficient bill of sale to Buyer all of Seller's right, title and interest in and to the undertaking business known as 'McAl-

■

lister-Julian-Poorman, Undertakers,' doing business at 304 North Fifth Street, Rockford, Illinois, including all personal property, appointments, furnishings, accounts receivable, Packard hearse, Hammond electric organ, chemicals and embalming equipment, books, files, records, prearranged funeral funds, good will, and all of said Walter R. Julian's rights to the use of the name 'McAllister-Julian-Poorman' or any one name or combination thereof, and Seller further agrees that on the date of sale, the cash bank balance shall be not less than the amount of total accounts payable and further the seller agrees not to engage directly or indirectly in the business of undertaking, embalming or being a mortician for a period of five years from and after the date of sale within a radius of twenty-five miles of 304 North Fifth Street, Rockford, Illinois, possession and all the Seller's interest to be delivered to the Buyer on or before January 1, 1950, and the Buyer to make the following additional payments at the following times to the Seller at Rockford, Illinois. . . ."

The Bill of Sale of December 30, 1949 from the defendant Julian, as the Seller, to the plaintiff Poorman, as the Buyer, an alleged copy of which is also attached as an exhibit to the complaint, contains the following language, so far as material:

". . . the Seller, does by this instrument bargain, sell, assign, transfer, convey and deliver unto Wm. H. Poorman, hereinafter referred to as the Buyer, all of the Seller's interest in the undertaking business known as 'McAllister-Julian-Poorman, Undertakers', a partnership doing business at 304 North Fifth Street, Rockford, Illinois, including all of the Seller's rights, title and interest in and to all personal property, appointments, furnishings, accounts receivable, bank deposits, chemicals and embalming equipment, books, files, records, prearranged funeral funds, Hammond Electric Organ, Packard hearse, and good will of

213

said partnership, and as consideration therefor, the the Buyer has heretofore paid . . . .

"The Seller acknowledges that this instrument is executed pursuant to an 'Agreement to Sell Business—Real Estate Option', entered into between Seller and Buyer on the 9th day of November, 1949 regarding sale and purchase of said undertaking business. . . ."

■■ The right of a natural person freely to use his own name in connection with his own business (in the absence of any fraudulent or wrongful intention or act) is so fundamental that an intention to entirely divest himself of such right and transfer it to another will not readily be presumed but must be clearly shown; where it is so shown the transaction will be upheld; but it will not be sustained upon doubtful or uncertain proof: Hazelton Boiler Co. v. Hazelton Tripod Boiler Co. (1892) 142 Ill. 494; Ranft v. Reimers (1902) 200 Ill. 386; Allegretti v. Allegretti Chocolate Cream Co. (1898) 177 Ill. 129.

■ This right, however, like most other property rights, may be the subject of sale and transfer, and where a party, by contract, sells out an established business, and with it his own name, to be used in connection with such business, the buyer will acquire a right to the use of the name, and the seller cannot afterwards resume it in carrying on the same business, —such conclusion resting upon the contract itself and being within the old doctrine and principle that a title based on a sale for a valuable and adequate consideration, fairly entered into between parties sui juris, will be upheld, and enforced in equity as well as at law: Frazer v. Frazer Lubricator Co. (1887) 121 Ill. 147.

It appears from the face of the complaint that after the expiration of five years from December 30, 1949, Walter R. Julian could engage in the undertaking

business anywhere, and, for that matter, could have so engaged even during the five years as long as such was not within a radius of 25 miles of 304 North Fifth Street, Rockford. The complaint alleges that he is now associated with Collins Y. Sundberg in some manner in the undertaking business. The period of five years mentioned in the agreement had elapsed long before this suit was started.

 The right to the use of a name in connection with a business may be a valuable one but a court of equity will enjoin the use by a natural person of his own name only when there is a grant to someone else of the exclusive right to use it. This exclusive right must be found in the final agreement of the parties by the use of the word "exclusive" or the intent of the parties to grant an exclusive right must be manifest: Frazer v. Frazer Lubricator Co. (1887) 121 Ill. 147.

 The word "exclusive" does not appear in the Agreement of November 9, 1949 with reference to the use of the name "McAllister-Julian-Poorman" or any one name or combination thereof. The language used in contracts, if not ambiguous, must be given the construction which the words used imply,—the language must be given its common everyday meaning,—nothing can be added to or taken from it to ascertain what the parties intended: John Gabel Mfg. Co. v. Murphy (1945) 390 Ill. 455, and the intentions of the parties are not to be determined from previous understandings or agreements, but must be ascertained from the instrument or instruments which they execute as their final agreement: Clark v. Mallory (1900) 185 Ill. 227; Pierpont v. Lanphere (1902) 104 Ill. App. 232; Eagle Fire Ins. Co. v. John Spry Lumber Co. (1908) 138 Ill. App. 609.

The subsequent Bill of Sale of December 30, 1949 does not purport to transfer in any way, exclusively

or otherwise, "all of said Walter R. Julian's rights to the use of the name 'McAllister-Julian-Poorman' or any one name or combination thereof." Assuming that the Bill of Sale of December 30th, incorporates everything in the Agreement of November 9th, by reference, did Julian bind himself unequivocally not to use his own name ever again in the undertaking business any time, any place? We think not. The undisputed facts that he had the right to engage in the undertaking business anywhere after the expiration of five years, and to so engage even during that five years outside the 25 mile radius, negative this. The plaintiff apparently under his contract has been using the name "McAllister-Julian-Poorman" in his undertaking business and this use is not an issue in this lawsuit. We are impressed with the defendants' argument that it would be unreasonable for the court to find that, so far as the instruments of the parties are concerned, Walter R. Julian admittedly could now engage in the undertaking business anywhere, and could have even done so during the five year period if outside the 25 mile radius, and yet that he must be restrained from using his own name in such business. The defendants cite Ch. 111½, Ill. Rev. Stats. (1957) par. 73.8a, relating to funeral directors, the second paragraph of which provides as follows:

"No licensee, and no partnership or association of licensees, formed since July 1, 1935, shall engage in the practice of funeral directing under a trade name or partnership or firm name unless in the use and advertising of such trade name, partnership or firm name there be published in connection therewith the name of the owner or owners thereof as such owner or owners."

It is unrealistic to think that so far as the agreement of the parties is concerned Julian could engage

216

in the undertaking business after the expiration of the five years, or even before if beyond the 25 mile radius, and yet be barred from doing so because the statute says he must use his name in connection therewith, which he cannot do by reason of an Agreement which did not contain the word "exclusive" with respect to the use of his name and a Bill of Sale which transfers nothing whatever in that respect.

It is also our opinion that this restraint if carried to the length the plaintiff urges, would cause an undue and unnecessary hardship on Julian. The restraint imposed is greater, under such circumstances, than that necessary to protect the plaintiff. The Supreme Court in the case of Bauer v. Sawyer (1956) 8 Ill.2d 351, used language as follows, p. 355, in referring generally to contracts in restraint of trade:

". . . In determining whether a restraint is reasonable it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee. . . ."

■ So far as appears from the complaint, as amended, the plaintiff has no such exclusive property right in the name in question as makes the defendants' use thereof an infringement which may be enjoined in equity: Ambassador Hotel Corp. v. Hotel Sherman Co. (1922) 226 Ill. App. 247; an intention on the part of Julian to divest himself of and transfer to Poorman the exclusive right to use his own name in the undertaking business is not, under all the circumstances, shown with such clearness and certainty in the complaint as would justify the Courts in undertaking to enforce it: Hazelton Boiler Co. v. Hazelton Tripod Boiler Co. (1892) 142 Ill. 494; the present case is more closely analogous to the Hazelton, supra, and

Ranft, supra, cases, than to the Frazer, supra, case, and the Frazer case points up some of the significant differences and distinctions.

For the foregoing reasons, we determine the judgment of the trial court is correct, and it will be affirmed.

Affirmed.

WRIGHT, P. J. and SOLFISBURG, J., concur.