**L. B. Herbst Corporation, Plaintiff-Appellant, v. Northern Illinois Corporation, Defendant-Appellee.**

**Gen. No. 67–161.**

Second District.

October 15, 1968.

Arthur Abraham, of Chicago, for appellant.

Castle and Burns, of DeKalb, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

This suit was brought by the plaintiff, L. B. Herbst Corporation, against the defendant, Northern Illinois Corporation, under an alleged written contract between the parties. A bench trial was had and the plaintiff appeals from the court's finding for the defendant.

The plaintiff is a commercial supplier of furnishings and fixtures and the defendant is a finance company. The controversy involves some 21 townhouse units built by Itasca Terrace, Inc. (Itasca) in DuPage County. On January 3, 1964, the defendant gave a written commitment to Itasca as follows:

"January 3, 1964

"Itasca Terrace, Inc.
Room 1255
228 North LaSalle Street
Chicago, Illinois

Attention: Mr. B. B. Bell, President

Gentlemen:

This letter will serve as our commitment to finance $2,200.00 per townhouse on all personal property, estimated cost to be $3,000.00. The maturity of 60 equal monthly installments for eighty-two (82) units with a minimum equity of 18%, with partial take out.

The rate is $5\frac{1}{4}\%$ add on per year.

Material damage insurance to be included in the contract at a rate of sixty ($.60) cents per $100.00 per year. Coverage is to be all risk less exclusions on a cash value basis.

Assignment of rents, excluding Marshall Savings and Loan rent assignment is to be given to Northern Illinois Corporation.

Yours very truly,

/S/ K. M. Snyder
K. M. Snyder,
Vice-President.

KMS/pjn
cc: L. B. Herbst & Co.

Accepted this ——— day of January, 1964.
By ...... /S/ B. B. Bell
President, Itasca Terrace, Inc."

This commitment was accepted by B. B. Bell as of the date of the letter.

On January 22, 1964, the plaintiff made a written proposal to Itasca giving some detail as to the type of furniture and fixtures to be delivered and indicating that these would be delivered for the sum of $1,732.00 per unit. Subsequently, on February 7, 1964, the following letter was executed by the President of Itasca and the Vice-President of the defendant, and was delivered to the plaintiff:

"February 7, 1964

"L. B. HERBST CORPORATION
325 North Wells Street
Chicago, Illinois

ITASCA TERRACE, INC. hereby agrees that, of the total NORTHERN ILLINOIS CORPORATION commitment, dated January 3, 1964, L. B. HERBST CORPORATION shall be reimbursed in full at the agreed-to figure of $1,732.00 per townhouse apartment unit, plus tax, F. O. B. factory, pursuant to a proposal dated January 22, 1964.

103

The foregoing sum shall be paid upon approval by ITASCA TERRACE, INC. of the installation of the total furnishings within each individual townhouse apartment.

Accepted by:

NORTHERN ILLINOIS CORPORATION
/S/ T. C. Courtney, Jr.
    Vice-President·

                    ITASCA TERRACE, INC.
                    /S/ B. B. Bell,
                        President"

The fixtures were delivered to Itasca and apparently held by them for about six months. Itasca did not make any of the installment payments or rent assignments to the defendant as called for under the commitment of January 3rd. Thereafter, Itasca became unable to pay the plaintiff the agreed amount and, as a result of this inability, suit was brought directly against the defendant finance company.

The only possible contract upon which the plaintiff can be relying is the letter of February 7, 1964, and in fact, the plaintiff indicates that this is the contract between the parties. The plaintiff contends that by the plain language of the letter of February 7, 1964, this defendant is bound to pay. However, we feel that the letter of commitment of January 3rd (which plaintiff claims he never saw although the letter shows a carbon copy directed to him) is essential for a proper determination of the rights of the parties hereto.

There is some uncertainty as to whether the plaintiff is relying on a theory that there is a direct contractual relationship between the parties or that the plaintiff is the third-party beneficiary of a contract between de-

fendant and Itasca. We reach no conclusion on that question and we give the plaintiff the benefit of either theory. On either theory this court is of the view that the plaintiff cannot prevail.

■ Both parties argue that the meaning of the contract must be found in its language. The court agrees that that is the general rule and that it should be applied in this case. Coney v. Rockford Life Ins. Co., 67 Ill App 2d 395, 399, 214 NE2d 1 (1966) ; 3700 S. Kedzie Bldg. Corp. v. Chicago Steel Foundry Co., 20 Ill App2d, 483, 486, 156 NE2d 618 (1959) and Poorman v. Julian, 22 Ill App2d 208, 215, 160 NE2d 169 (1959).

■ ■ In addition, if the plaintiff is relying on a third-party beneficiary theory, then it is clear that he must take the contract as the original parties made it. If he is a beneficiary, then he is bound by all of its provisions. He cannot take those parts of the contract which favor him and reject those parts which distress him. As the Supreme Court said in Carson, Pirie, Scott & Co. v. Parrett, 346 Ill 252, 258, 178 NE 498 (1931) :

> "The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing cannot be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability."

■ Turning our attention now to the letter of February 7, 1964, it appears on its face that the letter was subject to various conditions. First, it adopted by reference the commitment of January 3, 1964, and second, it provided that the sum in question would be paid only

upon approval by Itasca of the installation of the total furnishings within each individual apartment. The commitment of January 3, 1964, required various installment payments, none of which were made. It also required an assignment of rents, which was never given to the defendant. It is clear that Itasca never approved the installation, either orally or in writing. The plaintiff argues that their very acceptance of the furnishings constitutes an approval. There is great dispute in the record as to whether or not complaints were remedied by the plaintiff. The trial court found that Itasca had not approved the installation and we are not disposed to overturn his judgment in that regard.

It is clear from the record that the defendant received none of the things to which he was entitled under either the letter of February 7, 1964, or the commitment of January 3, 1964. Because of that, defendant is not bound to pay plaintiff on either of plaintiff's theories.

The trial court was correct and the judgment is therefore affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.