H. B. G. CORPORATION *et al.*, Plaintiffs-Appellees, *v.* NEAL HOUBOLT *et al.*, Defendants-Appellants.

Third District   No. 77-75

Opinion filed August 29, 1977.

Harry C. McSteen, of Joliet, for appellants.

Martin Rudman, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendants, Neal Houbolt, Appliance Wiring Components, Inc., and Interstate Wire Corporation appeal from a temporary injunction issued after an evidentiary hearing in the Circuit Court of Will County. Plaintiffs, H. B. G. Corporation and J. E. Messenger Company, Inc., brought the action seeking injunctive relief and damages for an alleged breach by defendants of a noncompetition restrictive covenant contained in an employment contract and an agreement for the sale of businesses.

The facts surrounding the various parties' dealings must be set out chronologically to fully understand the issues presented on appeal.

On or about February 16, 1963, defendant Neal Houbolt, his wife and his mother-in-law contracted in writing to sell their businesses, consisting of a partnership and two corporations, to plaintiffs' predecessor. The sale agreement contained provisions purporting to restrict the defendant and other sellers from competing, within the limits of the continental United States, for 5 years from the date of the sale, with customers of the businesses purchased. Paragraph 8 of the sale agreement required Neal Houbolt to enter into an employment agreement for a minimum period of 5 years with the purchaser as a condition of the parties entering into the agreement to purchase and sell the various business interests. In addition paragraphs 7 and 8 of the agreement to purchase and sell the various businesses provide:

"7. The SELLERS agree not to enter into competition, within the continental limits of the United States, with the PURCHASER in connection with the businesses being sold for a period of five years from the date of sale, either as officers, employees, directors, proprietors or stockholders and the SELLER, Neal Houbolt, agrees that the non-competition agreement as aforesaid shall apply to him for a period of five years from and after the termination of his employment by Gray Realty Corporation or any of its divisions.

8. As a specific condition of entering into this agreement, the PURCHASER requires and the SELLERS agree that Mr. Neal Houbolt must continue in the management of the businesses being acquired. Mr. Neal Houbolt agrees, therefore, to enter into a contract of employment as an employee of Gray Realty Corporation for a minimum period of five years at a salary of $25,000.00 per year."

Subsequent to the sale of the businesses, defendant Neal Houbolt entered into a written employment contract consistent with the requirement of the sale contract. The employment contract was embodied in a letter to Neal Houbolt dated March 1, 1963. The contract stated the following:

"This will confirm our understanding regarding your Employment by the electrical wire and wire harness division of H. B. G. Corporation as General Manager.

You are hereby employed as General Manager of the electrical wire and wire harness division of H. B. G. Corporation in compliance with the February 16th, 1963 Agreement between J. E. Messenger Co., et al, and Gray Realty Corporation for five years at a salary of $25,000 per year payable monthly. Your salary is guaranteed by H. B. G. Corporation for the period of five years and shall be continued to be paid to you or your legal representatives if during said five year period you shall die or become incapacitated or if your services are terminated by the action of H. B. G.

Corporation except that said salary shall not continue to be paid if you voluntarily terminate your services or if your services are terminated by H. B. G. Corporation for willful neglect of or willfull malfeasance or failure to perform your duties as such employee.

\* \* \*

You also agree that you will not, for a period of five years following the termination of your employment, directly or indirectly, own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by the electrical wire and wire harness division of H. B. G. Corporation. However, this limitation shall only apply so far as all persons or businesses which are or have been customers of H. B. G. Corporation, during the term of this agreement are concerned, and shall not prevent you from entering into any business activity which does not sell or supply or attempt to sell or supply to such customers of H. B. G. Corporation products similar to those manufactured and sold by H. B. G. Corporation.

If this letter expresses your understanding of our agreement, please sign in the space provided below."

Neal Houbolt signed the letter indicating his agreement. In the spring of 1968, defendant Houbolt had a conversation with the owner of plaintiffs' predecessor, the purchaser corporation wherein both acknowledged the expiration of the written employment agreement and wherein the owner of plaintiffs' predecessor expressed his intention not to renew the written employment agreement, but to continue Neal Houbolt's employment without a specific agreement. On February 17, 1974, 11 years after the sale, Neal Houbolt terminated his employment with plaintiff who had succeeded the original purchaser by virtue of a corporate name-change. Defendant thereafter devoted his full time to Jemco Engineering Company which he had formed in 1964. This company was also employed by plaintiffs to perform engineering services during defendant Houbolt's employment by plaintiffs. In March of 1974, Appliance Wire Components, Inc., was formed with Neal Houbolt's wife and son as officers and directors and in March of 1975, Interstate Wire Corporation was formed with defendant's wife and JoAnn Hand, a Jemco Engineering employee, and Dominic Bucciferro, a former employee of both J. E. Messenger Company, Inc., and Jemco Engineering Company, as officers and directors. Plaintiffs subsequently filed their complaint seeking to enjoin defendant Neal Houbolt from breaching the covenant contained in his employment agreement through

the operations and doings of Appliance Wiring Components, Inc., and Interstate Wire Corporation. The trial court granted plaintiff a temporary injunction from which this appeal resulted.

The defendant raises five issues on appeal:

"A) Whether the employment agreement of March 1, 1963, is the sole and controlling document at issue in this case.

B) Whether the restrictive covenant in the employment agreement of March 1, 1963, is unenforceable as being an unreasonable restraint upon trade.

C) Whether the employment agreement is unenforceable for lack of mutuality of consideration.

D) Whether the employment agreement expired in 1968 or in 1974 and whether the non-competition covenant therein, if valid, expired in 1973 or 1979.

E) Whether Plaintiff met its burden, at the hearing on its motion for temporary injunction, of showing a probability of success at trial in establishing certain required issues."

As a preliminary issue we must first decide whether the written employment agreement of March 1, 1963, is the sole and controlling document or whether the employment contract must be construed in connection with and dependent upon the earlier sale agreement of the various business interests to which Neal Houbolt was a party. The explicit language of the sell-out agreement contemplated the later employment contract and even expressly mandated its essential terms. The sale agreement contained a restrictive covenant by which all the sellers, including Neal Houbolt, agreed to not compete with the purchaser within the continental United States for a period of five years from and after the sale of the businesses. The sale agreement further required Neal Houbolt to continue in the employ of the purchaser and act as a general manager pursuant to a contract of employment for a minimum period of five years as a condition of the parties entering into the sell-out agreement. The sell-out agreement, titled "Agreement for the Sale of Assets," also spelled out in detail the conditions and terms of defendant's employment. The intention of the parties is apparent when the similarity of the employment contract ultimately agreed upon to the employment contract expressly spelled out and contemplated in the sell-out agreement is considered. It is not unusual nor erroneous to consider several separate writings to determine the nature of the agreement which is in issue. (*Poorman v. Julian* (2d Dist. 1959), 22 Ill. App. 2d 208, 160 N.E.2d 169; *L. B. Herbst Corp. v. Northern Illinois Corp.* (2d Dist. 1968), 99 Ill. App. 2d 101, 241 N.E.2d 125.) Neal Houbolt staying on to manage the businesses sold was a part of the consideration for the sale as evidenced by the written contract

language making his entering into an employment contract for a minimum of 5 years as a condition subsequent to the agreement on the sale of the businesses. In the case of *Vendo Co. v. Stoner* (2d Dist. 1969), 105 Ill. App. 2d 261, 245 N.E.2d 263, under very similar facts an employment contract was determined to be ancillary to and part of the sale of the businesses involved. We believe the same result should be reached in the instant case.

■■ ■ The defendant's second argument is that the restrictive covenant contained in the employment agreement is unenforceable as being an unreasonable restraint of trade. We agree that a noncompetition restrictive covenant in the context of an employment contract must satisfy several conditions to be termed reasonable. In *Dunn v. Shepherd* (5th Dist. 1975), 25 Ill. App. 3d 825, 323 N.E.2d 853, it was held that a restrictive noncompetition covenant must be reasonable in its time limitation and geographical limitation, the covenant must not go beyond the restriction necessary to protect a legitimate business interest, the covenant must seek to protect trade secrets or other confidential information, and the covenant must not be against public policy. The *Dunn* case involved a contract similar to the present restrictive covenant not to solicit customers and was found to be enforceable. The case of *Leavitt Co.v. Plattos* (1st Dist. 1975), 27 Ill. App. 3d 598, 327 N.E.2d 356, held a noncompetition restrictive covenant in an employment contract unenforceable against a former employee, but because the customers solicited by the former employee were not considered confidential information worthy of protection, and the customers had remained constant which therefore negated any irreparable damage to the employer's business. The instant case is also distinguishable from *Isabelli v. Curtis 1000, Inc.* (2d Dist. 1975), 31 Ill. App. 3d 1030, 335 N.E.2d 538, cited to us by defendant, because the restrictive covenant here is limited in both duration and geography and only to former or present customers during Houbolt's employment. A distinguishing characteristic of the instant restriction is that it is not only contained in an employment contract but the restriction and employment contract are mandated by a sell-out agreement of several ongoing businesses. In such instances a similar restrictive covenant of noncompetition has been held enforceable. (*O'Sullivan v. Conrad* (5th Dist. 1976), 44 Ill. App. 3d 752, 358 N.E.2d 926.) The cases of *Beltone Electronics Corp. v. Smith* (1st Dist. 1963), 44 Ill. App. 2d 112, 194 N.E.2d 21, and *Parish v. Schwartz* (1931), 344 Ill. 563, 176 N.E. 757, relied upon by the defendant both involved restrictive covenants being held unenforceable because of the lack of limitation as to geography and as to what customers could not be solicited. There the effect of the lack of geographical limitation without limiting competition

with past or present customers amounted to a general restraint on trade. The present situation is limited to a certain time span, a certain geographic boundary, and to past and present customers during defendant Houbolt's employment. Other cases have held that a similar restrictive covenant is enforceable where a permanent relationship existed between customers and employer so that protection could be afforded to the aggrieved employer to protect his legitimate business interest. In *Nationwide Advertising Service, Inc. v. Kolar* (1st Dist. 1973), 14 Ill. App. 3d 522, 302 N.E.2d 734, the court refused to enforce a similar restrictive covenant where the customers were transitory and hence not a protectible business interest. The evidence in the case at bar indicates plaintiffs had a permanent relationship with the limited number of customers which the covenant protected. We, therefore, conclude that the restriction on defendant was not unenforceable as an unreasonable restraint on trade.

■■ Defendant also argues that the employment agreement is unenforceable for lack of mutuality of consideration. As was set out earlier the ultimate employment contract was ancillary to the sale of the business interests. Houbolt and the other sellers agreed as part of the consideration to agree to the noncompetition restriction. For this the sellers received the purchase price for both their business interests and the good will which their businesses had established. Additionally defendant Houbolt received, during the actual course of his employment, a substantial salary and various fringe benefits. The plaintiffs have substantially performed their part of both the sale and employment contracts. Defendant does not suggest that during the course of his employment his salary or bonuses were reduced or that plaintiffs failed to perform their side of the contract in even the slightest manner. We are convinced that there was ample consideration for both the sale contract and employment contract. Accordingly, we reject defendant's claim that the noncompetition restriction is unenforceable for lack of mutuality of consideration.

■■ Defendant further contends that his noncompetition agreement expired in 1973, five years after the minimum period of his employment ended. To the contrary, it is our opinion that the restrictive noncompetition agreement does not expire until 1979, which is five years after the termination of defendant Houbolt's employment with plaintiffs. The agreement for sale provided for plaintiffs' benefit, that Houbolt would enter into an employment contract to lend his expert hand in the management of the businesses for a minimum period of five years at a stated compensation. Both the agreement for sale and the employment contract contain the parties agreement that Houbolt would not compete

for a period of five years from the termination of his employment. We agree with the trial court that the language of both documents which form the basic agreement, when read together, is plain and unambiguous. The language of both the sale agreement and employment contract is a clear and direct expression of both parties' intentions. We cannot ignore the obvious meaning which must be attached to the term "termination of employment" used in both documents. As we stated earlier the employment contract and sale agreement must and should be read together. To concede to defendant's argument that defendant's employment was terminated in 1968, with the end of his five-year minimum period of employment, is totally inconsistent with the sale agreement, which both contemplated the purpose of the employment contract and actually mandated the ultimate written employment contract. Although the record reflects that plaintiff and defendant did not renew their initial five-year written employment contract in writing, defendant did remain employed under the same terms as the original contract until 1974. Where the agreement itself is clear and unambiguous, the court will not resort to rules of construction. *Donahue v. Rockford Showcase & Fixture Co.* (2d Dist. 1967), 87 Ill. App. 2d 47, 230 N.E.2d 278.

■■ Defendant's final argument is that plaintiffs failed to establish the probability of their success at the trial on the merits. Because defendant filed an answer to the plaintiffs' complaint for injunction denying the material allegations of the complaint, plaintiffs had to establish on the basis of the pleadings and the evidence that they would probably be entitled to ultimate relief in a trial on the merits. (*Professional Business Management, Inc. v. Clark* (3d Dist. 1967), 83 Ill. App. 2d 236, 227 N.E.2d 371.) Several recent cases have addressed the problem of the burden necessary to show a likelihood of success on the merits in an injunction case such as this. "All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that he probably will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the positions of the parties should stay as they are until the court has had an opportunity to consider the case on the merits." (*Wessel Co. v. Busa* (1st Dist. 1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414, 417.) A similar result utilizing the same language and reasoning was reached in *Shappert v. Roettger* (2d Dist. 1976), 36 Ill. App. 3d 452, 343 N.E.2d 695. Plaintiffs made an adequate showing that their business would be irreparably damaged if the injunction did not issue and that their remedy at law was inadequate. We believe the trial court did not abuse its discretion in concluding that plaintiffs had established such a likelihood of success on

the merits at trial of the issues to justify the issuance of the injunction. For the reasons stated the judgment of the Circuit Court of Will County is affirmed.

Judgment affirmed.

ALLOY, P. J., and STOUDER, J., concur.