## Jack L. BRIGGS

v.

## R. R. DONNELLEY & SONS CO.

### Civ. A. No. CA73-29-F.

United States District Court,
D. Massachusetts.

Feb. 24, 1978.

James J. Mullen, Providence, R. I., for plaintiff.

Robert A. Downing, Sidley & Austin, Chicago, Ill., Andrew F. Lane, Gaston, Snow & Ely Bartlett, Boston, Mass., for defendant.

FREEDMAN, District Judge.

This diversity action seeking declaratory relief calls upon the Court to apply Illinois law in ruling on the validity of a covenant in a deferred compensation plan (the "Plan") offered by defendant R. R. Donnelley & Sons Company to selected employees. The covenant provides that a participant in the Plan who engages in any activity in competition with defendant within three years of the termination of his employment forfeits his right to receive payments due him under the Plan. Plaintiff, Jack L. Briggs, a former employee of defendant whose payments under the Plan were terminated by operation of the covenant, seeks to have this Court declare the covenant null and void as against public policy and order the return of his contributions to the Plan.

The Court has previously denied defendant's motion to dismiss for lack of jurisdiction and motion to transfer the action pursuant to the provisions of 28 U.S.C. § 1404(a). Finding summary judgment to be "too sterile" a medium for the determination of the reasonableness of the covenant, the Court also denied plaintiff's motion for summary judgment. The matter was tried on January 12, 1977, and the Court now makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. Plaintiff is a citizen of the State of Rhode Island.

2. Defendant is a Delaware corporation with its principal place of business in Chicago, Illinois. Defendant has an office in Boston, Massachusetts.

3. The matter in controversy, exclusive of costs and interest, exceeds the sum of ten thousand dollars ($10,000).

4. Plaintiff entered the employ of defendant in June of 1936 as a rotogravure apprentice. At that time, plaintiff was 17 years old, was a high school graduate, but had not attended college.

5. From 1936 until he resigned his position in 1968, plaintiff held various jobs with defendant including journeyman pressman, foreman in the press room, superintendent of the rotogravure department, group superintendent, division director, and finally vice-president in charge of manufacturing of the Chicago Manufacturing Division (hereinafter "vice-president-Chicago").

6. Plaintiff first held a supervisory position with defendant in 1950 and was promoted to vice-president in 1962. In 1964 he was given charge of the Chicago Division (hereinafter the "Division") which he ran until his resignation.

7. As vice-president-Chicago, plaintiff was responsible for managing the assets and employees of the Division. In 1968, the Division consisted of three plants and employed some 6,000 people. Life Magazine, the National Geographic Magazine, and the Sears Roebuck Catalog were among the materials printed and bound by the Division in 1968.

8. As vice-president-Chicago, plaintiff attended defendant's "President's Council" meetings at which such items as capital expenditures, labor problems, and to some extent divisional operating costs and profits were discussed.

9. Beginning in about 1960, plaintiff attended defendant's "Executive Committee" meetings. These meetings were held monthly to review the profitability of the various divisions of the defendant. On occasion, needs of particular customers were discussed at the meetings.

10. Detailed financial information about defendant of the sort available to plaintiff at the "President's Council" and "Executive Committee" meetings was not publicly available.

11. During the relevant period, defendant developed or assisted in the development of new technologies. Plaintiff had knowledge of some of this development. Not all of the equipment and systems developed by defendant during this period was available on the market.

12. The financial and technological information available to plaintiff in his capacity as vice-president-Chicago was potentially helpful to competitors of the defendant.

13. On or about April 23, 1965, the stockholders of defendant approved a deferred compensation stock units plan. The Plan permitted a participant to defer portions of his annual earnings. The defendant credited to the account of each participant stock units with a total market value of 125% of the participant's contribution to the Plan. Sums accumulated under the Plan, plus interest, were paid to a participant in installments upon termination of his employment with defendant.

14. Paragraph 9(c) of the Plan provides:

9. Payment of Deferred Compensation. (c) If, without the prior written consent of the Company, any Participant or former Participant shall engage in any activity in competition with the Company during his employment or within three years after his retirement or termination of employment his participation in the Plan shall thereupon automatically terminate and the Company thereafter shall have no obligation to make any payments to such Participant or former Participant or to any person claiming through or under such Participant or former Participant.

15. Paragraph 7 of The Rules for Administration of the Plan (hereinafter the "Rules") provides:

7. Cancellation of Benefits.

In the event that any Participant in the Plan, or any former Participant, who is receiving, or may be entitled to receive, present or future payments or deferred compensation, shall at any time within three years after termination of his employment, without prior written consent of the Company, accept employment by any competitior of the Company, or its subsidiaries, or otherwise engage in any activity in competition with the business then being conducted by the Company, or its subsidiaries, the right of such Participant to continue to participate in, or the right of such former Participant to receive payments of deferred compensation under, the Plan shall forthwith terminate, and the Company shall have no further obligation to make any payments under the Plan to such Participant or former Participant, or any person claiming under or through such Participant or former Participant. In no event shall the Company be obligated to make any payments of deferred compensation (represented by the Stock Units Account and Cash Account on the Company's books) to any Participant or former Participant (or any person claiming under or through such Participant or former Participant) at any time after it has been determined that such Participant or former Participant has engaged in any activity in competition with the business of the Company or any of its subsidiaries.

16. Only officers over 45 years of age and who earned $50,000 a year or more were eligible to elect to participate in the Plan. Initially, only 13 persons were eligible for the Plan.

17. The Rules provide that the laws of the State of Illinois shall govern the construction, administration and enforcement of the Plan.

18. By letter dated October 27, 1965, plaintiff was given the opportunity to elect to participate in the Plan. At that time he was furnished a copy of the Plan and of the Rules.

19. Plaintiff voluntarily elected to participate in the Plan and signed a participation agreement on December 10, 1965. The agreement incorporates the terms of the Plan and the Rules.

20. Plaintiff's contributions to the Plan were $6,959.66 in 1966, $10,522.09 in 1967, and $6,233.08 in 1968—a total of $23,715.13.

21. Plaintiff voluntarily terminated his employment with defendant in May of 1968.

22. In July of 1968, plaintiff accepted employment as President of McCall Printing Co.

23. Plaintiff served as President of McCall Printing Co. from July, 1968, to November, 1969. In December of 1969 he became a vice-president of W. R. Bean & Sons, Inc. in Atlanta, Georgia, in which capacity he served until March of 1970. Plaintiff subsequently assumed the presi-

**156**

dency of Providence Gravure, Inc. of Providence, Rhode Island.

24. Defendant was at all relevant times a world-wide printing company having plants throughout the United States. Its customers are world-wide.

25. At all relevant times, McCall Printing Co., W. R. Bean & Sons, Inc., and Providence Gravure, Inc. were competitors of defendant.

26. By letter dated July 29, 1968, plaintiff was advised that the provisions of Paragraph 9(c) of the Plan and Paragraph 7 of the Rules (collectively, the "covenant") were invoked and that his entitlement to payments under the Plan was cancelled.

*Discussion*

The parties are citizens of different states and the jurisdictional amount requirement imposed by 28 U.S.C. § 1332 is met. The Court therefore has jurisdiction over the subject matter of this action. The parties are in agreement that the law of the State of Illinois is applicable.

Employee covenants not to compete present the problem of balancing the competing interests of the employee and the public in a freely competitive marketplace with the interest of the employer in protecting legitimate business interests. See generally, Blake, *Employee Agreements Not to Compete*, 73 Harv.L.Rev. 625 (1960); Note, *Forfeiture of Pension Benefits for Violation of Covenants Not to Compete*, 61 N.W.L.Rev. 290 (1966); Note, 50 Cornell L.Q. 673 (1965). Cases involving such covenants usually arise when an employer seeks to enjoin competitive activity by an employee. The case at bar presents the less common situation of an employee seeking to have declared void a covenant forfeiting his deferred compensation payments if he competes with his former employer. Courts in some jurisdictions have had occasion to rule on the validity of covenants requiring for-

feiture of such benefits as pension plan payments, profit-sharing plan payments and renewal commissions. See Annot., 18 A.L.R.3d 1246 (1968). There is, however, little guidance on the precise issue at bar[1] and the Illinois courts have not yet directly faced the question. *Cf., Parenti v. Wytman & Co., Inc.*, 49 Ill.App.3d 860, 364 N.E.2d 909 (1st Dist. 1977).

In denying plaintiff's motion for summary judgment, this Court ruled that the forfeiture provision of defendant's deferred compensation plan is not illegal *per se.* While plaintiff persists in his contention that a provision which forfeits personal contributions from salary is void on its face as to those contributions, plaintiff presents no Illinois precedent supportive of his assertion. Indeed, the prevailing practice of the Illinois courts in cases involving any kind of employee covenant not to compete has been to determine whether the covenant is in restraint of trade, and, if so, whether it is reasonable. *E. g., Johnson v. Country Life Insurance Co.*, 12 Ill.App.3d 158, 300 N.E.2d 11 (4th Dist. 1973).

The covenant at bar is clearly in restraint of trade under Illinois law. The covenant presents participants in defendant's deferred compensation plan with the choice of abstaining for three years from new employment in competition with defendant or accepting such employment and forfeiting payments under the plan. The effect of this provision is to restrain trade. It makes no difference that the covenant is part of an agreement which the parties entered into freely or that participants are not absolutely precluded from accepting other work upon termination of their employment with defendant.[2] *Johnson v. Country Life Insurance Co., supra.*

Although I find the covenant to be in restraint of trade, I do not find it to be unreasonable. The reasonableness of a covenant in restraint of trade depends upon

[1] That issue being the validity of a covenant requiring forfeiture of payments due an employee under a deferred compensation plan funded largely by the employee's own contributions.

[2] While these factors do not effect the restraint of trade question, they do bear on the reasonableness of the covenant.

the particular facts of the case. *Booth v. Greber*, 48 Ill.App.3d 213, at 220, 6 Ill.Dec. 477 at 219, 363 N.E.2d 6 at 11 (1st Dist. 1977). The Appellate Court of Illinois, First District, has stated that:

> . . . in all instances where courts are faced with the decision of whether to enforce a particular postemployment restriction, they must balance its social utility against its adverse effect on both the covenantor and the public.

*C. G. Caster Co. v. Reagan*, 43 Ill.App.3d 663 at 667, 357 N.E.2d 162 at 165 (1st Dist. 1976). In striking this balance, the Court must consider whether the covenant is reasonable in its time and geographic extent, whether it is broader than necessary for the protection of a legitimate business interest, and whether it denies the public a needed service. *Dunn v. Shepherd*, 25 Ill.App.3d 825, 323 N.E.2d 853 (5th Dist. 1975); *accord, H. B. G. Corporation v. Houbolt*, 51 Ill. App.3d 955, 10 Ill.Dec. 44, 367 N.E.2d 432 (3d Dist. 1977). *See also, Emery-Drexel v. Cook DuPage Transportation Co.*, 40 Ill. App.3d 937, 353 N.E.2d 182 (1st Dist. 1976).

Plaintiff argues that since the covenant here states no geographic limitation on its application, it is unreasonable.[3] The circumstances of this case do not justify that conclusion. Defendant has plants throughout the United States and customers throughout the world. A covenant stating a geographic limitation would be ineffectual in protecting defendant's interests. Where a geographic limitation would serve no purpose, the absence of a geographic limitation should not, by itself, render a covenant unreasonable. *Cf. Wolf & Co. v. Waldron*, 51 Ill.App.3d 239, 9 Ill.Dec. 346, 366 N.E.2d 603 (1st Dist. 1977).

The covenant at bar is not broader than necessary for the protection of legitimate interests of defendant. Plaintiff, although of limited educational background, is clearly a sophisticated businessman, capable of utilizing at least some of the financial and technological information available to him through his association with defendant. While it may be, as plaintiff asserts, that much of this information was available to plaintiff only if he made an effort to obtain it, it is enough that he was exposed to at least some information of potential benefit to defendant's competitors. In any case, it was certainly not unreasonable for defendant, in order to protect against the possibility of competitors obtaining this information, to ask plaintiff to covenant against competitive activity. A narrower covenant would not have been coextensive with the legitimate interests defendant seeks to protect.

The crux of plaintiff's argument is that the covenant at bar is contrary to public policy because the monies forfeited by operation of the covenant are for the most part plaintiff's own contributions to his deferred compensation account. Once invested in the Plan by plaintiff, however, these monies were not unlike other employee benefits. Cases considering the validity of employee benefit forfeiture provisions have consistently applied a test of reasonableness. *E. g., Johnson v. Country Life Insurance Co., supra; Van Pelt v. Berifco, Inc.*, 60 Ill. App.2d 415, 208 N.E.2d 858 (1st Dist. 1965) (applying Massachusetts law). Even where such provisions have been found to be invalid, public policy has not been the basis for such a determination. *E. g., Johnson v. Country Life Insurance Co., supra.*

Furthermore, it should be kept in mind, that defendant was under no obligation to offer the deferred compensation plan and plaintiff was under no compulsion to accept it. While, as noted, these facts do not affect the restraint of trade question, they do bear on the reasonableness of the covenant. In effect, what transpired in 1965 is that defendant offered plaintiff, *already a high-level employee*, the opportunity to defer a portion of his income. Defendant contributed a percentage of plaintiff's contribution to further sweeten the tax benefits of deferring the income. In exchange

---

**3.** The Court notes that plaintiff does not challenge the reasonableness of the covenant's three-year time prohibition.

therefor, and as a condition thereto, defendant required that the plaintiff accept the covenant. This is simply not a case where an employee was compelled to accept a restrictive covenant in order to obtain employment with or advance to a higher position within a company.

It should also be kept in mind that unlike the more common covenants prohibiting competitive employment, the covenant at bar left plaintiff with a choice of competing and forfeiting the benefits of the Plan or not competing and retaining the Plan's benefits. While such a covenant restrains trade, it does so by providing an inducement for compliance rather than by imposing a ban on noncompliance. Although this distinction is conceptually subtle, it underlies the reasonableness of the covenant. *Cf. Bradford v. New York Times Co.*, 501 F.2d 51, 58 (2d Cir. 1974).

On balance, the Court concludes that the challenged covenant is reasonable and valid. Plaintiff is therefore not entitled to the declaratory relief he seeks nor to return of his contributions to his deferred compensation account.

*Conclusions of Law*

1. This Court has jurisdiction over the subject matter of this action.

2. Illinois law is applicable in determining the validity of the covenant.

3. The covenant is in restraint of trade.

4. Under Illinois law, noncompetition covenants in restraint of trade are not illegal *per se*, but are valid if they are reasonable under the facts and circumstances.

5. The covenant is reasonable under the circumstances of this case.

6. The covenant was properly invoked in this instance and plaintiff is not entitled to the declaratory judgment he seeks nor to return of his contributions to his deferred compensation account.