THE LEAVITT COMPANY, Plaintiff-Appellant, *v.* WILLIAM N. PLATTOS *et al.*, Defendants-Appellees.

(No. 60929;

First District (1st Division)—April 7, 1975.

Collins & Amos, of Chicago (Richard T. Wimmer, of counsel), for appellant.

Kantor & Apter, of Chicago (David Apter, of counsel), for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

The Leavitt Company (plaintiff) brought suit for injunction against William N. Plattos (defendant), its former employee and his new em-

ployer, Seymour Goldwater. Plaintiff also prayed an accounting against Goldwater as a constructive trustee. After hearing testimony upon the motion of plaintiff for a preliminary injunction, the court found the restrictive covenant in the contract of employment between plaintiff and defendant to be invalid, denied the motion for injunction and dismissed the complaint for want of equity. Plaintiff appeals.

In this court, plaintiff contends that the restrictive covenant contained in the employment contract was reasonable in all respects so that it should have been enforced by the court and that no special knowledge or other circumstances need be shown to justify enforcement of the restrictive covenant. Defendant contends that the employment contract was executed by him involuntarily and under duress and that the restrictions in the agreement are unreasonable and invalid and the cause was correctly dismissed because no special knowledge or other matters were shown to support the attempted restriction on competition.

Plaintiff's business activity is described as a "pick-up" business. The evidence shows that plaintiff and Goldwater are involved in similar business activities. When large mail-order houses, such as Montgomery Ward & Company, Sears Roebuck & Company or Aldens, find it impossible to obtain any particular merchandise carried in their catalogs, they communicate with a pick-up firm which obtains the same or similar items from various sources which are generally not known to the mail-order firm. Apparently plaintiff and Goldwater are the only firms in the Chicago area engaged in this type of business. Both of them do business with the same mail-order houses above specified so that both generally service the same accounts.

Some time during 1972, plaintiff hired defendant as a sales representative. It was defendant's duty to contact the mail-order firms in question, ascertain when they were short of any particular merchandise and then find a source from which the merchandise could be obtained to satisfy their needs. On February 26, 1973, plaintiff and defendant entered into a written contract referred to as an employment agreement. Plaintiff agreed to pay defendant a specified salary plus commission during the term of employment. No termination date was specified beyond the provision that plaintiff could terminate the employment at any time without cause upon 21 days prior written notice and any time for cause without prior written notice.

The contract contained a covenant by defendant in which he agreed that during the entire term of his employment thereunder, and for 3 years after his employment ceased, he would not become engaged or associated in any capacity as an employee, or otherwise, or financially interested in "any enterprise, firm, organization of corporation or other entity which

is engaged in the 'pick-up' business with Montgomery Wards, Sears Roebuck & Co., Aldens or other mail-order houses, which is a part of [plaintiff's] business at the time or at the time of such termination of employment * * *." In the contract, the defendant acknowledged that his employment by plaintiff might cause him to receive or gain access to "or develop certain information and data relating to business systems, business procedures, customer and supplier lists, designs, systems, marketing techniques, promotional plans and other business information and items * * *" which would constitute a part of the confidential information used by plaintiff in its business. Defendant agreed to keep all such information "strictly confidential during the term of this Employment Agreement and at all times thereafter."

The evidence shows, and it is undisputed, that on Friday, June 7, 1974, defendant quit his employment with plaintiff and took up a position with Goldwater on Monday, June 10, 1974. In his new employment he did the same work and contacted the same mail-order accounts as he had during his employment by plaintiff. Defendant engaged in active solicitation and in the same type of work in behalf of the same mail-order houses then serviced by plaintiff and also by Goldwater.

In plaintiff's complaint for injunctive enforcement of the restrictive covenant, plaintiff described his business, the employment of defendant and the agreement between the parties. Plaintiff alleged that defendant was wilfully and knowingly violating his covenant and that plaintiff "is now, and will in the future, suffer irrepairable [sic] injury if the Defendant is allowed to continue to call upon and deal with companies and persons with whom he dealt while he was an employee of Plaintiff * * *." Plaintiff also alleged, on information and belief, that defendant may have taken certain confidential business information with him when he left plaintiff's employment and that the loss of this information and exposure to plaintiff's competitors would cause plaintiff irreparable injury.

Upon due notice to defendant, the court entered a temporary restraining order preventing defendant from soliciting business from the three specified mail-order houses. This temporary order expired by its terms on July 8, 1974, at which time the court heard the evidence in full on plaintiff's motion for temporary injunction. The record before us contains no answer to the complaint by defendant. In argument before the trial court, the defendant contended, as he does here, that he was obliged to enter into the employment agreement, including the restrictive covenant, by duress and also that the agreement is unreasonable and therefore unenforceable. The trial court did not pass upon the defense of duress but specifically found that the restrictive covenant was invalid and the com-

plaint was dismissed for want of equity. In our opinion, the trial court arrived at the correct result.

Discussion of the validity of a covenant of this kind must commence with *House of Vision, Inc. v. Hiyane*, 37 Ill.2d 32, 225 N.E.2d 21. In considering the validity of a restrictive covenant contained in an employment contract, the court concluded that the restrictions extended "far beyond those necessary to the protection of any legitimate interest * * *" of the employer. The court went on to say (37 Ill.2d 32, 39):

> "We conclude that the restrictions in the employment contract were not reasonably necessary for the protection of the plaintiff."

Thereafter in *United Travel Service, Inc. v. Weber*, 108 Ill.App.2d 353, 247 N.E.2d 801, the appellate court cited *House of Vision* and held a rather similar restrictive covenant in the contract of employment between a travel agency and its employee to be invalid and unenforceable. The court pointed out that there was no evidence of the existence of any trade secrets used by the travel agent in his business and that the procedure of this employer was no different than that of travel agencies generally. In other words, the court pointed out that the employer there had no secrets as distinguished from general trade practices; hence, the covenant was for the purpose of preventing competition and was therefore invalid and unenforceable. See 108 Ill.App.2d 353, 357, 358.

Most recently, in a similar case involving a restrictive covenant in an employment contract between an advertising agency and its solicitor, this court reached the same result upon the same reasoning. In *Nationwide Advertising Service, Inc. v. Kolar*, 14 Ill.App.3d 522, 302 N.E.2d 734, the court cited and depended upon *House of Vision* and also *United Travel Service*. The court held that the record "does not demonstrate that the plaintiff had a protectable business interest in its customers that required the restraint of its former employee." 14 Ill.App.3d 522, 529.

It should be noted that in *Nationwide* this court gave careful consideration to *Cockerill v. Wilson*, 51 Ill.2d 179, 281 N.E.2d 648 which is cited and depended upon in plaintiff's brief in the case before us. This court differentiated *Cockerill* because it involved the right of a veterinary physician to protect his clientele and practice from a former employee who had made contacts on the strength of his association with plaintiff. (See 14 Ill.App.3d 522, 527.) Similarly in the older case of *World Wide Pharmacal Distributing Co. v. Kolkey*, 5 Ill.App.2d 201, 125 N.E.2d 309, also cited and depended upon by plaintiff, this court enforced a restrictive covenant against a former employee on the ground that the restraint was not more extensive territorially than reasonably necessary to protect the business of plaintiff.

■■ In the case before us, it is abundantly clear from the evidence that no confidential information, trade secret or esoteric information of any kind was involved. The term "trade secret" is defined and discussed in *Central Specialties Co. v. Schaefer* (N.D. Ill. 1970), 318 F.Supp. 855, 859. The court there held that restrictive covenants are generally permissible only where the restraint imposed is no greater than necessary for the employer's protection and that pertinent factors in making this determination are existence of trade secrets or elements of unfair dealing. 318 F.Supp. 855, 858.

It appears from the evidence here that both plaintiff and Goldwater actually served and assisted the identical mail-order houses. Exactly where it was possible to obtain any of the diverse items needed by a mail-order house was not a matter of trade secrets but simply something learned by every person from day-to-day experience in the trade. Plaintiff attempted to allege the existence of trade secrets in his complaint but no facts justifying injunctive relief on that basis were alleged and the evidence shows that such factor is nonexistent here.

■■■■ fatal weakness in plaintiff's case arises from the fact that neither the allegations of his complaint, nor the evidence that he adduced, show the existence of any trade secret, or process, or secret information of any kind. Thus, plaintiff has completely failed to allege and prove that his business would be irreparably damaged by violation of the restrictive covenant and therefore he has failed to show that the restraint sought by the covenant was reasonably necessary to protect his business. Plaintiff's complaint should have alleged positively and precisely by factual allegations that "irreparable harm" would result if the restriction was not enforced. (*Hall v. Orlikowski Construction Co.*, 24 Ill.App.3d 60, 63, 321 N.E.2d 23.) To justify injunctive relief by enforcement of the covenant, it was necessary for plaintiff to prove that he would be irreparably damaged in his business if the injunction did not issue. *Western Leasing Co. v. Kirkpatrick*, 4 Ill.App.3d 704, 707, 281 N.E.2d 444.

■■ It should also be pointed out that the restrictive covenant involved is thoroughly and completely unreasonable. It has a time limitation of 3 years after the termination of defendant's employment. Nothing in this record justifies the existence of a restriction for that period of time. Furthermore, there is no geographic limitation to the restriction which covers three mail-order houses, at least one of which is generally known to be involved in business of a national and international scope. Under no circumstances can we find that this restriction as to time and place has any reasonable relation to the orderly operation of the business here involved or that any legitimate need for protection of plaintiff's business is present to justify this type of attempted restraint. In short, we conclude that

the restriction extends far beyond what is necessary for reasonable protection of any legitimate interest of the plaintiff. It is accordingly invalid and unenforceable and plaintiff's complaint was correctly dismissed for want of equity.

Judgment affirmed.

EGAN and SIMON, JJ., concur.