EMERY-DREXEL LIVERY, d/b/a Carey of Chicago, Plaintiff-Appellant, v. COOK - DU PAGE TRANSPORTATION COMPANY et al., Defendants-Appellees.

First District (1st Division)   No. 76-355

Opinion filed August 2, 1976.

Foran, Wiss and Schultz, of Chicago (Richard A. Devine, of counsel), for appellant.

Jerome E. Wexler and John P. C. Duncan, both of Chicago (Holleb, Gerstein & Glass, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Emery-Drexel Livery, doing business as Carey of Chicago, a corporation (plaintiff), brought action against Cook - Du Page Transportation Company, a corporation, Jans and Company, Robert Jans, Timothy Jans and Ann Marie Jans (defendants) for damages and for an injunction prohibiting defendants from competing with plaintiff. After receiving evidence and hearing arguments the trial court denied plaintiff's motion for a preliminary injunction. The trial court made written findings of fact and conclusions of law. Plaintiff appeals.

The evidence shows that plaintiff provides chauffeur driven automobiles for hire to customers in Chicago and the surrounding area. Prior to 1973, the drivers of these vehicles were employees of plaintiff. Some time during that year, plaintiff filed a petition for decertification of the employees' union with the National Labor Relations Board. In due course, about October 1973, after reaching an agreement with the labor union, plaintiff gave all of these employees the option of retaining their status or of entering into a uniform written "Independent Operator Agreement." This agreement, generally speaking, converted the signatory employees into independent contractors. At the present time all of plaintiff's drivers are either employees or independent contractors. These agreements contained various stipulations and covenants, including the following:

"C. In the event of the termination of this AGREEMENT by the COMPANY pursuant to clause X, the INDEPENDENT OPERATOR hereby agrees that, for a period of one year after the date of such termination, the INDEPENDENT OPERATOR shall refer to the COMPANY any and all business requested by customers of the COMPANY or by any customers reported on the INDEPENDENT OPERATOR'S daily summary of services during the year prior to termination."

Defendant Robert Jans was one such employee who signed the independent contractor agreement on October 1, 1973. His brother, Timothy Jans, had also worked for plaintiff as a driver commencing in the fall of 1973. Timothy's status as employee or contractor was uncertain because although he had never signed the contract with plaintiff, he had functioned as an independent operator. Their father, Arthur Jans, not a defendant herein, also had worked as an independent contractor for plaintiff.

Jans and Company was originally established by Arthur, Robert and Timothy Jans for the purpose of providing inexpensive gasoline and maintenance services to vehicles driven by the Jans family and certain other of plaintiff's drivers. During part of the time the members of the Jans family worked as drivers employed by plaintiff, their salaries were paid to Jans and Company. The defendant, Cook - Du Page Transportation Company was organized by Timothy and Robert Jans and their mother, Ann Marie Jans, for the purpose of providing chauffeur driven automobile transportation service to recipients of public aid.

While the Jans brothers, Timothy and Robert, were employed as drivers for plaintiff, one of plaintiff's customers was the Cook County Department of Public Aid. Plaintiff provided vehicles and drivers to transport recipients of public aid to and from necessary medical

appointments. In this regard, plaintiff's vehicles operated virtually as taxicabs. The Department of Public Aid called the plaintiff each day and placed advance orders for automobile transportation for recipients for the following day. The cost of this transportation was paid by the Department of Public Aid, presumably pursuant to direct billing from plaintiff. The identity of persons transported varied daily, weekly and monthly. Invariably all of these arrangements were made by representatives of the Department of Public Aid and not by the persons who actually received the transportation service.

In June, and again in August 1975, defendant Robert Jans was contacted by representatives of the Departments of Public Aid of Cook County and of Illinois. They requested that he develop an improved method of providing transportation for welfare recipients. He was informed that he had been chosen because he was not then himself conducting business as a carrier of public aid recipients. The representatives of the Departments of Public Aid informed Robert Jans that they were interested in lowering the cost of transportation and improving the quality of service rendered. Jans was informed that the Departments had been subjected to criticism for existing transporation programs and that these plans had to be improved or terminated. The situation had progressed to the point that the Departments would no longer contract exclusively with existing carriers such as plaintiff for this service. There is testimony that after the June 1975 incident, Robert Jans attempted to contact an official of plaintiff for the purpose of discussing this problem. His attempt was not successful.

During the August 1975 discussion, representatives of the Departments requested that Robert Jans work out a pilot or trial program for diffusion of these transportation services among several companies in various districts. Jans suggested a revision of clerical procedures and institution of a system which assigned a single carrier to transport recipients in a particular area, thereby realizing a savings from carrying more than one passenger on each trip. This plan was successfully implemented by the Departments in August and September 1975.

In August 1975, plaintiff became aware that other carriers were providing transportation to public aid recipients in areas previously serviced by plaintiff. Upon further inquiry, plaintiff determined that this was being done by defendant Cook - Du Page Transportation Company, owned by defendants Ann Marie, Robert and Timothy Jans. Plaintiff thereupon asked Robert Jans to return plaintiff's livery permits to prevent the Jans brothers from transporting their own customers through the use of plaintiff's permits. This request was complied with.

In October 1975, plaintiff had a representative present at a meeting with

the Cook County Department of Public Aid which was also attended by representatives of other transport companies. Those present at the meeting were informed that the Department had instituted a new pilot program for providing necessary livery service to aid recipients. This change was a result of an audit of the Department's transportation services by the United States Department of Health, Education and Welfare. The Department of Public Aid had been instructed to reduce its transportation budget. The parties to this action have stipulated that implementation of this new program by the Department has caused plaintiff a substantial loss of income.

On September 5, 1975, plaintiff filed its complaint which alleged that defendants were: "presently communicating, divulging and using for their benefit customer lists and other information derived from Plaintiff as part of the [Independent Operator] Agreement, causing great and irreparable loss and damage to Plaintiff, including loss of business and good will." The complaint further alleged a breach of plaintiff's employment agreement with the Jans brothers, who were alleged to be independent contractors with plaintiff.

In this court, plaintiff contends that the independent operator agreements entered into between plaintiff and its drivers are valid contracts binding on the parties; and the restrictive covenants contained in these contracts are reasonable, valid and enforceable. Defendants urge that these restrictive covenants are void and unenforceable; and that the contract between plaintiff and Robert Jans is void for lack of mutuality.

The principles of law concerning enforcement of restrictive covenants contained in employment contracts has had an interesting, if complicated, evolution in Illinois. The validity of these post-employment restrictive covenants depends in a large sense upon social and economic factors. An exposition of this subject is set forth in *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414, *appeal denied*, 60 Ill. 2d 602. This court pointed out the pertinent considerations such as "the economic mobility of employees as well as their freedom to follow personal interests, * * * " and on the other hand the need to use this type of agreement as a legal and social tool to "protect the employer from an unwarranted erosion of confidential information, and thereby foster the growth of innovative ideas." 28 Ill. App. 3d 686, 690.

Not too many years ago the courts of this jurisdiction tended to enforce restrictive covenants as an adjunct to employment contracts wherever the provisions of the covenants were reasonable in terms of time and territory encompassed. (See *Barrington Trucking Co. v. Casey* (1969), 117 Ill. App. 2d 151, 156, 253 N.E.2d 36, leave to appeal denied 42 Ill. 2d 586.) At the present time, however, the initial and primary inquiry is not only the reasonableness of the covenants but whether plaintiff can prove the

existence of a protectable business interest or property right such as reasonably justifies the restraint required of its former employee.

■■ Otherwise stated, it is necessary for plaintiff as a condition precedent to the enforcement of a post-employment restrictive covenant to prove that the restraint sought is reasonably necessary for the protection of his business. (*Leavitt Co. v. Plattos* (1975), 27 Ill. App. 3d 598, 327 N.E.2d 356.) In *Wessel Co. v. Busa*, this court applied both of the tests and concluded that plaintiff was entitled to injunctive relief in enforcement of such a covenant because the terms of the restraint were reasonable and in addition plaintiff did have a definite property right in extensive customer contact enjoyed by the defendant and intimate knowledge of the plaintiff's customer requirements which "exceeded traditional boundaries of salesman responsibilities." 28 Ill. App. 3d 686, 692.

■■ Applying these accepted principles to the case before us, we note that no losses of customers and no trade secrets are involved. The single customer is the Department of Public Aid which has voluntarily sought, with good reason and justifiable cause, to expand livery service to public aid recipients by dealing with other companies in addition to plaintiff. The governmental agency here involved is a public body whose identity and needs constitute publicly available information. The amount of public aid business which plaintiff would have handled was necessarily decreased not by any action or effort of defendants but solely as a result of the laudable desire of a public body to conserve its funds pursuant to the direction of a higher Federal authority. Under these circumstances we need not consider whether the restraint sought to be imposed was reasonable in its terms. In our opinion, the conclusion correctly reached by the trial court that plaintiff did not have a protectable business interest in its customers sufficient to require imposition of restraint upon defendants is dispositive of the issues before us.

We do not find it necessary to discuss and differentiate all of the many authorities cited by able counsel in their briefs.We have carefully considered the recent decision of this court in *O'Hare-Midway Limousine Service, Inc. v. Quick* (1976), 37 Ill. App. 3d 554, 346 N.E.2d 3. We do not regard this decision as justifying any different result other than above indicated in the case before us. We note that in *O'Hare-Midway*, quite contrary to the situation before us, the defendant compiled a list of names including various customers served by plaintiff so that he might send them announcements or advertising matter when he entered into a competing business. In any event, consideration of the decision there does not alter our position as above stated.

In addition, we need not reach and do not decide the question of whether the contract between plaintiff and defendant Robert Jans was

void for lack of mutuality. The result reached by the trial court when it denied plaintiff's motion for a temporary injunction was proper and it is affirmed.

Order affirmed.

SIMON and O'CONNOR, JJ., concur.