HAAG BROTHERS, INC., Plaintiff-Appellant, v. ARTEX INTERNATIONAL, INC., Defendant-Appellee.

First District (1st Division)   No. 77-354

Opinion filed April 24, 1978.—Rehearing denied May 22, 1978.

G. Kent Yowell, of Northbrook (Littlejohn, Glass & Yowell, of counsel), for appellant.

David P. Schippers and John W. Long, both of Chicago (Schippers, Betar, Lamendella & O'Brien, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Haag Brothers, Inc. (plaintiff), brought action against Artex International, Inc. (defendant), for wrongful interference with contracts of employment between plaintiff and two of its former employees. A jury returned a verdict for defendant. Plaintiff appeals.

In this court, plaintiff contends the trial court erred in striking certain portions of plaintiff's complaint and in granting a motion *in limine* to exclude reference to the stricken portions at trial; in refusing certain

instructions; in giving the jury an improper special interrogatory and in denying its motion for judgment *n.o.v.*

Plaintiff is engaged in selling supplies to hospitals and other health care facilities. Defendant had been a supplier of plaintiff until 1969. In that year, defendant took over the business of a competitor of plaintiff. Beginning in 1971, a number of plaintiff's personnel left its employ to work for defendant in its new business. At least two of these employees had been under contract with plaintiff. It is plaintiff's theory that defendant induced these employees to breach their contracts with plaintiff.

Clifford LaPlaunt was hired by plaintiff as a salesman in late 1961. Since 1963 he had been under written contract with plaintiff on a year-to-year basis. The contract provided for automatic renewal on the first of each year unless either party gave notice of termination within 60 days prior to the renewal date. In this agreement, LaPlaunt covenanted that for two years after the termination of employment, regardless of manner or cause, he would not compete with plaintiff or represent any business in competition with plaintiff's business and would not attempt to divert any of plaintiff's business or the patronage "of any customers who shall have dealt with [plaintiff]." The contract specified the State of Iowa as LaPlaunt's territory.

William Morgan was hired by plaintiff as a salesman in 1970. His employment contract was similar to that of LaPlaunt's. Morgan's renewal date was February 2 of each year. He was assigned to the State of Michigan.

Milton Libman had been employed by plaintiff as its sales manager until he resigned in June 1971. At that time he took a position with defendant as general manager of its business competing with plaintiff. As part of this new job, Libman was required to increase the size of defendant's sales staff.

Called by plaintiff as an adverse witness, LaPlaunt testified he was looking for a new job in February and March 1972. He had become dissatisfied with his job with plaintiff. His sales had been dropping off, and he wanted to find something better. In February or March 1972, he telephoned the Libman residence to ask Libman about the prospects of employment in defendant's selling activities. Libman was not at home and LaPlaunt left a message for Libman to return his call. Libman did so. When informed of LaPlaunt's desire to find a new job, he told LaPlaunt he would like to talk to him further. Libman did not offer LaPlaunt a job at that time.

LaPlaunt further testified that he was unable to get to Chicago to talk to Libman. Instead, on March 10, 1972, Libman went to Waterloo, Iowa, to

meet with LaPlaunt. They discussed the possibility of LaPlaunt working for defendant but Libman did not offer him a job. Libman, who was aware of the contract between LaPlaunt and plaintiff, told LaPlaunt to think about what he was doing and to give Libman another call.

LaPlaunt stated that he resigned from plaintiff's employ on April 14, 1972. He notified Libman of his resignation. Libman then hired him to work for defendant. LaPlaunt stated that he "knew it was a sure thing" that he had a job with defendant upon resigning from plaintiff.

Libman, who had not been employed by defendant for two years prior to trial, was called as a witness by plaintiff. In general, he corroborated LaPlaunt's testimony. Libman stated that it was LaPlaunt who made the first contact in March 1972. He also testified about a telephone call that had been placed from his home to LaPlaunt's home in August 1971. The cost of this call was listed as a business expense on Libman's expense report to defendant. Libman did not remember making the call, or its purpose. LaPlaunt testified that he did not speak to Libman on the day of this August 1971 call. He testified that his children were friends of Libman's son and possibly the call was placed by Libman's son.

William Morgan, called as a witness by plaintiff, testified that in 1971 he was dissatisfied with his job and had been seeking employment through some local employment agencies. During early September 1971, Morgan contacted Darrel Everett, who was then currently employed by defendant, to arrange a meeting. Everett was a former employee of plaintiff. He commenced working for defendant on August 27, 1971. Morgan described Everett as his friend. Morgan testified that he did not mention to Everett that he was looking for a job. He described the purpose of the meeting as social. Morgan stated that when he came to visit Everett the two of them had lunch with Libman. At lunch they discussed the aspects of working for defendant. Morgan testified it was he who initiated the subject of employment to Everett and Libman. He also testified that this was the last conversation he had with anyone connected with defendant prior to his resignation from plaintiff, which occurred in September 1971. Libman testified that he knew Morgan was under contract and he told Morgan that defendant would not consider hiring him until he severed his relationship with plaintiff. After resigning from plaintiff, Morgan began working for defendant.

In Count I of its amended complaint, plaintiff alleged that LaPlaunt had misused confidential information and had breached the covenant not to compete. LaPlaunt and defendant moved the court to strike those allegations of Count I which related to the misuse of confidential information and breach of covenant. (Paragraphs 3—6, 8 and 9.) The motion urged that the covenant was void as a matter of law. The trial court granted the motion to strike. Plaintiff elected to stand on the

remaining counts of its complaint. These alleged that defendant, through its agent Libman, wrongfully induced LaPlaunt and Morgan to breach their contracts of employment. All the allegations as to LaPlaunt were stricken. However, LaPlaunt was retained as a defendant and was called by plaintiff as an adverse witness. Prior to submission of the case to the jury, plaintiff dismissed LaPlaunt with prejudice.

■■ Plaintiff's first contention is directed to the order striking those portions of its amended complaint that concerned the restrictive covenants. In these covenants, plaintiff's employees, LaPlaunt and Morgan, agreed that for two years from the termination of their employment they would not "have any interest in any business in competition with Employer's [plaintiff's] business, nor attempt to solicit, divert or take away any of Employer's business, or the patronage of any customers who shall have dealt with Employer." The issue of validity of such restrictive covenants must necessarily be considered from two points of view: the reasonableness of the restriction as regards time and area and whether the restriction is reasonably necessary for protection of the employer. In all cases the issue of whether a covenant is reasonable in its restriction or is contrary to public policy and therefore unenforceable is a question of law. *Tarr v. Stearman* (1914), 264 Ill. 110, 118-19, 105 N.E. 957; *Barrington Trucking Co. v. Casey* (1969), 117 Ill. App. 2d 151, 156, 253 N.E.2d 36, *appeal denied* (1970), 42 Ill. 2d 586.

■■ It has been held repeatedly that these restrictive covenants, which are basically in restraint of trade, will be enforced only in situations in which their limitations as to time and territory are not unreasonable. (*Canfield v. Spear* (1969), 44 Ill. 2d 49, 50-51, 254 N.E.2d 433. See also *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21.) In the case before us, the restriction against the former employees was, in our opinion, invalid as to time because it fixed the restrictive period at two years following termination of employment. No justification appears for such a harsh restriction upon the employee's activities for such a long period. (See *Statistical Tabulating Corp. v. Hauck* (1973), 10 Ill. App. 3d 50, 293 N.E.2d 900.) In addition, in the case at bar, the restrictive covenants had no geographical limitation. They prohibited the former employee from attempting to solicit any of plaintiff's business in any location and attempted to prevent solicitation of any customers who had ever dealt with plaintiff. The record shows that plaintiff's business was carried on, among other areas, in the States of Michigan and Iowa. Enforcement of this restrictive covenant by injunction or allowance of damages would thus deprive the former employee of substantial rights in his effort to succeed in his future employment. In our opinion, this broad restriction is also unreasonable and therefore unenforceable. *Statistical Tabulating Corp.*, 10 Ill. App. 3d 50, 52.

■■ We next consider the necessity of the restrictive covenants for the protection of plaintiff's property rights. It has been held that, in order to obtain enforcement of a covenant of this kind, plaintiff would be required to allege and prove that "irreparable harm" would result if the restriction was not enforced. See *Leavitt Co. v. Plattos* (1975), 27 Ill. App. 3d 598, 602, 327 N.E.2d 356, and authorities there cited.

This issue is somewhat related to the situation in which an employer seeks to enjoin the misuse of confidential information or trade secrets by his former employees. Where the existence of trade secrets or secret lists of customers can be established, injunctive relief may more readily be obtained. Compare *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795.

In the case before us, however, we find neither pleadings nor evidence which make a case regarding the existence of trade secrets or any particular special information which could properly be classed as secret or confidential. The stricken portions of plaintiff's amended complaint repeat the conclusionary phrase "confidential information" but in the evidence there is no showing of any trade secret or any matter of a confidential nature. The situation here is limited to knowledge of the identity of the customers and their personal acquaintance with the former employees. In a situation closely similar to the case at bar involving the right of solicitation of a special type of customer of mail-order houses, injunctive relief has been denied on the express grounds that no trade secret was involved. (*Leavitt Co.*, 27 Ill. App. 3d 598, 602.) Based upon a combination of all of these reasons, we conclude that the restrictive covenant in question was legally unenforceable.

■■ It has been held that one of the essential elements which a plaintiff must prove in an action for unlawful interference with contractual relations is the existence of a valid contract. (*Marcus v. Wilson* (1973), 16 Ill. App. 3d 724, 729-30, 306 N.E.2d 554, citing *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 897, 275 N.E.2d 429.) These covenants, not being enforceable against the employees, could not be the basis of any action against defendant for inducing the breach thereof.

We therefore conclude that the pretrial order striking the allegations regarding the restrictive covenant from the amended complaint was legally proper. Similarly, the motion *in limine* allowed by the trial court which prevented reference to the covenant was proper.

■■ Plaintiff's next contention is that the trial court erred in refusing certain instructions tendered by plaintiff. The first of these instructions (Plaintiff's No. 6) states generally that if a person, with knowledge of a contract of employment, induces the employee to breach the contract without just cause, to the employer's injury, such person is liable for damages. The substance of this refused instruction is included in the

instructions given the jurors on the burden of proof (Illinois Pattern Jury Instructions, Civil, No. 21.02) (2d ed. 1971) (hereinafter cited as IPI Civil) and on the issues (IPI Civil No. 20.01). It is not error to refuse an instruction when the given instructions fairly and adequately state the law applicable to the case. *Gaenzele v. B. E. Wallace Products Corp.* (1976), 39 Ill. App. 3d 93, 98-99, 350 N.E.2d 571.

The next two instructions complained of (Plaintiff's Nos. 7 and 8) are also general statements of law. No. 7 stated that to have just cause to induce a breach of contract one must have a right to the employee's services equal to or superior to the right of the employer. No. 8 stated that desire to engage an employee of another is not a legal excuse for inducing a breach of contract. These instructions were improper in that plaintiff did not raise the defenses of right or privilege at the trial. Thus, the tendered instructions were not based on the evidence and were correctly refused. *Grant v. Joseph J. Duffy Co.* (1974), 20 Ill. App. 3d 669, 683, 314 N.E.2d 478.

Plaintiff also directs our attention to plaintiff's refused instructions Nos. 25 and 26. No. 25 states that. where the parties to a written contract mutually consent to an oral modification and later comply with other terms of the written contract, neither party can later claim that the agreement as modified is invalid. The second instruction is to the effect that written contract may be modified by a subsequent oral agreement between the parties or by conduct and acquiescence of the parties. On these two instructions plaintiff's brief simply states, without citation of authority, that without these instructions the jury "could have erroneously concluded that modification affected the existence of the contract."

The conference on instructions shows that plaintiff's instruction No. 25 was tendered. After discussion between the parties, the trial court ruled that the instruction would be refused. Counsel for plaintiff then stated that he wished to rewrite the instruction because of faulty English. Nothing in the record shows that such a rewritten instruction was ever tendered or whether the refused instruction as it now appears in the record reflects its original form or its modified form. The conference on instructions and the balance of the record contain no statement of any kind concerning instruction No. 26 or the ruling of the court thereon except for the endorsement "Refused" thereon.

The pleadings present no affirmative defense or other allegation regarding any oral or other modification of the contracts of employment to which plaintiff was a party. The statement in plaintiff's brief as to the possible effect of either of these instructions upon the jury is pure speculation. In addition, if any such issue existed in the case, it should properly have been incorporated in the instructions on the issues and burden of proof. We find no reversible error in this regard.

All of the contentions advanced by plaintiff concerning the instructions are, in our opinion, technical and present at most minor irregularities. It has been aptly stated that, "The trend of judicial opinion reveals a reluctance to reverse cases on the ground of technical errors in instructions * * *." (*Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 515, 119 N.E.2d 241; *Probus v. Brown* (1975), 33 Ill. App. 3d 639, 640, 338 N.E.2d 231.) We reject plaintiff's claim of error in the refused instructions.

At the conference on instructions, plaintiff requested the court to submit three special interrogatories to the jury. One special interrogatory inquired as to whether the defendant induced Clifford LaPlaunt to breach his contract with plaintiff and the second asked this same question regarding William Morgan. The third interrogatory inquired as to whether there was "a contract in existence between Clifford LaPlaunt and Haag Brothers [plaintiff] when Clifford LaPlaunt left the employment of Haag Brothers, Inc." The jury answered each of these special interrogatories by writing the word "No" in the space provided. Plaintiff's brief makes no point on the first two of these special interrogatories. However, plaintiff's brief does urge that the last special interrogatory was erroneous because the issue of whether the written contract was in existence was a question of law.

The record shows a statement by the trial court at the conference on instructions that defendant was tendering three special interrogatories and that plaintiff objected to each of them. The court then continued:

"* * * but the two I have now will be given and the other one will be tendered tomorrow and I will pass on them."

The court then proceeded to summarize the two special interrogatories then submitted. It appears that these were the first two interrogatories above described which asked whether defendant induced the employees to breach their contracts with plaintiff. The court then went on to say that changes would be made in certain of the instructions and they would be considered in the morning along with interrogatory No. 3. However, the following page of the record shows trial resumed on August 4, 1976, but the remainder of the record contains no reference to the third interrogatory, now assailed by plaintiff.

■■ In the case before us, as shown by the above recitation, there is no objection shown in the record to the interrogatory in the form in which it was finally submitted. The record shows only a general objection as stated by the court to all three interrogatories. The record does not show the form in which the assailed interrogatory was originally submitted, what changes if any were made therein, and exactly what plaintiff's objection was. In our opinion, in this type of situation, any objection by plaintiff to the interrogatory must be deemed waived. This is analogous to a general objection to evidence (*Bank of Marion v. Robert "Chick" Fritz, Inc.*

(1974), 57 Ill. 2d 120, 127, 311 N.E.2d 138), or to instructions (*Havlovic v. Scilingo* (1972), 7 Ill. App. 3d 918, 922, 289 N.E.2d 79). In our opinion, plaintiff has failed to present this issue for review.

■ The plaintiff's final contention is that the verdict is contrary to the manifest weight of the evidence. The defendant's evidence regarding the alleged wrongful inducement consisted of direct testimony of the principals. Both LaPlaunt and Morgan testified they were dissatisfied with their employment by plaintiff. They stated that they were looking for new jobs prior to their employment by defendant. Libman testified that he did not offer either LaPlaunt or Morgan a job prior to their resignation and departure from plaintiff's employ.

Plaintiff's case, on the other hand, consisted of circumstantial evidence from which the jury might possibly have found inducement. In this regard plaintiff was handicapped in that the only parties with firsthand knowledge of the facts testified in a manner contrary to plaintiff's position. It is understandable that the jury placed greater credence on the direct testimony of the principals rather than on plaintiff's circumstantial evidence.

Plaintiff urges that the trial court should have entered judgment for plaintiff *n.o.v.* The proper legal principle applicable here is that judgment *n.o.v.* should not be granted unless "all the evidence 'when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " (*McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 101-02, 338 N.E.2d 868, quoting from *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504. See also *Walling v. Lingelbach* (1976), 65 Ill. 2d 244, 357 N.E.2d 530.) The rejection of plaintiff's argument in this regard is patently necessary.

A similar conclusion must necessarily be reached in regard to the contention that the verdict and the jury responses to the special interrogatories are contrary to the weight of the evidence. This court should affirm a jury verdict unless the verdict is contrary to the manifest weight of the evidence. Where the evidence presents issues of credibility, the determination of the factual issues rests with the jury. (*Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 440, 354 N.E.2d 415.) The above analysis of the evidence demonstrates, in our opinion, that the verdict in the case before us is not contrary to the manifest weight of the evidence, but is strongly supported thereby. The judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.