IMAGE SUPPLIES, INC., Plaintiff-Appellee, *v.* JOHN R. HILMERT, Defendant-Appellant.

First District (1st Division) No. 79-280

Opinion filed April 23, 1979.

Feiwell, Galper & Lasky, Ltd., of Chicago (George S. Feiwell, Michael A. Braun, and Bernard L. Rivkin, of counsel), for appellant.

Dowd, Dowd & Dowd, Ltd., of Chicago (Daniel J. Dowd, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This interlocutory appeal stems from the issuance of a preliminary injunction restraining John R. Hilmert (defendant) until further order of the court, but not beyond August 31, 1979, from contacting or soliciting customers of Image Supplies, Inc. (plaintiff), within a 50-mile radius of plaintiff's principal place of business for the purpose of selling materials used in the printing trade. Defendant has appealed.

The facts developed at the hearing prior to issuance of the injunction show that plaintiff sells printing supplies at retail to printers. Plaintiff's business in Chicago has been carried on since 1957. The great majority of plaintiff's customers are located within the Chicago metropolitan area including Elgin and also Hammond, Indiana.

Plaintiff hired defendant as a salesman during 1971. Thereafter defendant became sales manager. He also acquired 10 percent of the capital stock of plaintiff corporation. On February 5, 1976, the parties entered into a written employment contract expiring August 31, 1978. The contract included a restrictive covenant which is at the core of the controversy before us. This covenant provided:

"9. *Restrictive Covenant.* For a period of one year after termination of this Agreement, the Employee will not, within a radius of 100 miles from the present place of business of the Employer, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by the Employer at the time of the termination of this Agreement."

Although plaintiff had a staff of five salesmen, defendant was the only sales employee who signed a written contract. Plaintiff's business is fairly substantial. In 1978 plaintiff's gross sales were about $2,250,000. Customers handled by defendant contributed about $1 million per year.

In December of 1978, defendant sent plaintiff a letter of resignation. This letter pointed out the termination of defendant's employment contract on August 31, 1978. It stated that defendant's resignation would be effective as of December 15, 1978. Defendant had accepted a position as vice president of a competitor of plaintiff. This firm was also doing business in the metropolitan area of Chicago. Defendant advised at least one of plaintiff's suppliers by letter concerning defendant's new position.

The evidence shows that plaintiff's business is quite competitive,

therefore, pricing information is important. As part of defendant's duties he distributed invoices to all of plaintiff's sales personnel. These documents reflected names of the customer, products purchased, name of the purchasing agent and various discounts offered by plaintiff in each particular transaction. From these invoices and from other office records defendant had access to the names and addresses of plaintiff's customers. The evidence is that customers' files were kept in an unlocked cabinet in plaintiff's office. A number of secretaries and file clerks were present in this area. Information regarding merchandise sold, prices charged and discounts permitted was available to all employees in the office and to the salesmen. The names of the customers with whom plaintiff dealt were all listed in the telephone book and in at least three professional publications. Any person could speak to a purchasing agent of these customers simply by use of the telephone. Contacts were maintained with the customers by plaintiff's employees in a business as well as in a social manner. Customers who had made purchases from plaintiff also dealt with plaintiff's competitors. Thus, in event of a shortage of materials, plaintiff's customers could and did acquire these items from other sources.

In this court defendant urges that the restrictive covenant is void and unenforceable because its purpose is to protect plaintiff from competition and there is no trade secret or confidential information involved which would warrant the issuance of the preliminary injunction. Plaintiff responds that the finding of the trial court should be sustained because it is not against the manifest weight of the evidence and the restrictive covenant, as modified by the trial court in the order for preliminary injunction, is enforceable because it is reasonable in its limitations and necessary for the protection of a legitimate interest of plaintiff.

The decision to grant a preliminary injunction rests within the sound discretion of the trial court. (*Stocker Hinge Mfg. Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 643, 377 N.E.2d 1125.) Therefore, the role of this court on review is restricted to a determination of whether the trial judge correctly exercised his broad discretionary powers. *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414, *appeal denied* (1975), 60 Ill. 2d 602.

■■ For a preliminary injunction to issue, the party seeking the injunction must establish: (1) possession of a right which needs protection; (2) immediate and irreparable injury if the preliminary injunction is denied; (3) lack of an adequate remedy at law; and (4) probability of his ultimate success on the merits. (*Stocker Hinge Mfg. Co.*, 61 Ill. App. 3d 636, 642.) In the instant case, such a showing is dependent upon the enforceability of the restrictive covenant at issue.

■■ Whether a restrictive covenant is enforceable is a question of law. (*Barrington Trucking Co. v. Casey* (1969), 117 Ill. App. 2d 151, 156, 253

N.E.2d 36, *appeal denied* (1970), 42 Ill. 2d 586.) "Illinois courts, through recent decisions, have encouraged fair competition in business while exhibiting an abhorrence of restraint of trade." (*TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 1004, 380 N.E.2d 963.) For this reason, covenants not to compete in employment contracts are carefully scrutinized by the courts. (*Wessel Co.*, 28 Ill. App. 3d 686, 690.) A restrictive covenant may be held enforceable only if the time limit and geographic scope are reasonable, trade secrets or confidential information are involved, and the restriction is reasonably necessary for the protection of a legitimate business interest. *Dunn v. Shepherd Insurance Agency, Inc.* (1975), 25 Ill. App. 3d 825-26, 323 N.E.2d 853.

Therefore, it follows that our initial and primary consideration is not only the reasonableness of the covenant, but also includes whether plaintiff has proven the existence of a protectable business interest or property right which justifies the enforcement of the restrictive covenant. *Emery-Drexel Livery v. Cook-Du Page Transportation Co.* (1976), 40 Ill. App. 3d 937, 940-41, 353 N.E.2d 182.

In the instant case plaintiff maintains that it has a protectable business interest in the names and locations of its customers, their purchasing agents, and the prices at which its products are sold to each customer. Plaintiff contends that such information is confidential and it would be irreparably harmed if defendant were allowed to use it. Defendant claims that the names of purchasing agents and prices could be readily obtained by asking the customer involved. We agree. Defendant further claims that the names and locations of plaintiff's customers are not confidential and therefore plaintiff has no protectable business interest in them.

The evidence shows that the names of the firms in the printing business are readily ascertainable by reference to the telephone directory or at least three professional publications. In addition, the plaintiff's customers were generally well known to plaintiff's competitors. These customers also dealt with its competitors. The instant case is similar to *Nationwide Advertising Service, Inc. v. Kolar* (1973), 14 Ill. App. 3d 522, 302 N.E.2d 734. There, defendant Kolar was the former employee of a business engaged in solicitation and placement of recruitment advertising for personnel. Kolar had covenanted not to solicit or accept business relating to recruitment advertising for personnel from certain of his employer's past customers. This court held that plaintiff did not have a protectable business interest in its customers that would require restraint of its former employee. This result was based on the failure of plaintiff to show that defendant had acquired any confidential information while employed.

In arriving at that conclusion, this court distinguished *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648, and *Canfield v. Spear*

(1969), 44 Ill. 2d 49, 254 N.E.2d 433, both cited and relied upon by plaintiff herein. The defendants in those cases were a doctor of veterinary medicine and a doctor of medicine, respectively. This court stated, "The very nature of the professions in which those plaintiffs were engaged indicates that they could justifiably anticipate a permanent or near-permanent relationship with their clientele." (*Nationwide Advertising Service*, 14 Ill. App. 3d 522, 528.) We further found that such a relationship was so substantially different from the nature of the personnel advertising business that the holdings in *Cockerill* and *Canfield* could not be dispositive of the issues presented in *Nationwide*. The same analysis is applicable to the instant case.

Additionally in *McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 419, 364 N.E.2d 420, this court held that the restrictive covenant there in question was unenforceable because the plaintiff had failed to show that the restriction was reasonably necessary for the protection of its business. Empire itself had published brochures which announced the types of businesses from which it drew its customers. Therefore, any competitor could contact the plaintiff's customers merely by communication with the firms listed under that type of business in the classified directory. "[T]here was nothing confidential about the names and addresses of the firms Empire and its competitors were serving, but instead they were common knowledge in the trade, usually ascertainable by anyone engaged in the collection business." *McCormick*, 49 Ill. App. 3d 415, 419.

A similar result was reached in *Haag Brothers, Inc. v. Artex International, Inc.* (1978), 60 Ill. App. 3d 141, 376 N.E.2d 636, *appeal denied*, 71 Ill. 2d 608. There, defendants covenanted that for two years after termination of employment they would not compete with plaintiff or attempt to divert any customers who had dealt with plaintiff. This court stated that "[w]here the existence of trade secrets or secret lists of customers can be established, injunctive relief may more readily be obtained." (*Haag Brothers, Inc.*, 60 Ill. App. 3d 141, 146.) In *Haag Brothers*, there was no showing of any trade secret or confidential matter. The situation was limited to knowledge of the identity of the customers and their personal acquaintance with plaintiff's former employees. Hence, the restrictive covenant was found to be unenforceable.

In the instant case, any of plaintiff's competitors could readily obtain the names and addresses of those firms interested in printing supplies. The names were listed in the telephone directory and in professional publications. "While clientele may properly be called the customers of a particular business, they cannot be considered the 'property' of that business. While a business can have a proprietary interest in lists of customers which it maintains, no business has a

proprietary interest in customers themselves." (*Murphy v. Murphy* (1975), 28 Ill. App. 3d 475, 478, 328 N.E.2d 642; see also *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21.) Because plaintiff has failed to establish that it has a protectable business interest in the names of its customers, it has failed to demonstrate that the restrictive covenant is reasonably necessary for the protection of its business. (See *Isabelli v. Curtis 1000, Inc.* (1975), 31 Ill. App. 3d 1030, 1038, 335 N.E.2d 538; *Leavitt Co. v. Plattos* (1975), 27 Ill. App. 3d 598, 602, 327 N.E.2d 356.) Under these circumstances any enforcement of the restrictive covenant would be an effort to prevent competition *per se*. It follows that plaintiff has failed to show (1) existence of a protectable interest; (2) immediate and irreparable injury in event of denial of injunctive relief; and (3) probability of success on the merits. Consequently, in our opinion, the preliminary injunction appealed from was improvidently entered.

In view of the disposition of this issue, we need not consider defendant's second contention concerning the scope of the restrictive covenant. The injunctional order is accordingly reversed.

Order reversed.

McGLOON and O'CONNOR, JJ., concur.