REGIONAL TRANSPORTATION AUTHORITY, Plaintiff-Appellee, *v.*
BURLINGTON NORTHERN INC., Defendant-Appellant.—(ILLINOIS
COMMERCE COMMISSION, Intervening Appellant.)

First District (1st Division)    No. 81-1605

Opinion filed September 22, 1981.

Richard J. Schreiber, Kenneth J. Wysoglad, and Thomas J. Knapp, all of Chicago, for appellant Burlington Northern Inc.

Tyrone C. Fahner, Attorney General, of Chicago (James E. Weging and E. King Poor, Assistant Attorneys General, of counsel), for appellant Illinois Commerce Commission.

Jeremiah Marsh, Michael Schneiderman, Michael M. Conway, and John L. Rogers, III, all of Hopkins & Sutter, of Chicago (Carl J. Frank, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

On motion of Regional Transportation Authority (RTA) the trial court entered a preliminary injunction preventing Burlington Northern Inc. (Burlington) and Illinois Gulf Central Railroad Company from instituting fare increases approved by the Illinois Commerce Commission (ICC). Burlington has prosecuted this interlocutory appeal. The ICC has become a party by intervention.

Since July 1, 1975, Burlington and RTA joined in a "purchase of service" agreement. (See Regional Transportation Authority Act, Ill. Rev. Stat. 1979, ch. 111 2/3, par. 701.01 *et seq.* (RTA Act).) Under that agreement RTA set the fares on which Burlington operated its Chicago metropolitan commuter services. In return, RTA agreed to subsidize Burlington so as to make up any deficit between fare revenues and operating costs. The three-year contract was extended by the parties in 1978 and was due to expire on June 30, 1981.

On July 7, 1980, Burlington sent RTA a written request to enter into a new purchase of service agreement commencing July 1, 1981. In February, Burlington requested the then current agreement, set to expire on July 1, be extended for one year. In response, on March 31, 1981, RTA tendered Burlington a draft of a new purchase of service agreement to commence on July 1, 1981. Thereafter, Burlington informed RTA it wished to negotiate certain aspects of the new agreement. It is undisputed that the parties have since engaged in contract negotiations but have not finalized a new agreement.

As of January of 1981, because of its financial difficulties, RTA has been unable to meet many of its obligations, including those to Burlington. In early June of 1981, Burlington brought an action against RTA for some $2.4 million in unpaid subsidies accrued as of May 15, 1981.

On June 15, 1981, while this action against RTA was pending, Burlington filed a tariff with the ICC requesting a 12.5 percent fare increase commencing July 1. At the same time, Burlington announced its intention of seeking an additional two-tiered fare increase of 20 percent as of August 1, and 27.5 percent as of September 1. This plan would have resulted in an eventual increase of approximately 60 percent from the fares of June 1981. On June 17, the ICC asserted jurisdiction and approved the initial 12.5 percent increase. On the same day, RTA also announced a 12.5 percent fare increase for all commuter rail service within the system, including Burlington, pending adequate funding by the General Assembly.

These injunction proceedings were filed on June 19, 1981. Burlington sought to remove the cause to the Federal court. On motion of RTA the case was remanded to the circuit court of Cook County. (See *Regional Transportation Authority v. Burlington Northern Inc.* (N.D. Ill, No. 81 C 3487, filed June 23, 1981), ___ F. Supp. ___.) On June 24, Burlington received a letter from the RTA which requested Burlington to agree to extend the purchase of service agreement due to expire on June 30, for three additional months. On June 25, an officer for Burlington testified herein that his company "will not accept" this extension of the previous agreement.

After Burlington had filed a tariff with ICC in June, Burlington and

RTA held some negotiations regarding their proposed new purchase of service agreement. While no final agreement was consummated, this court was advised on oral argument that negotiations had continued during the current month. Furthermore, Burlington never officially notified RTA it wished to withdraw from the RTA system, nor that it intended not to seek further RTA funding.

In this court, Burlington contends because no agreement between RTA and Burlington was formalized, their association terminated upon the expiration of the purchase of service agreement on June 30, 1981. Therefore, Burlington urges, jurisdiction over fares charged by Burlington reverted to the ICC under the Public Utilities Act. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 36.) Burlington further contends the application of the RTA Act by the trial court was contrary to the laws and Constitution of the United States, and, even if RTA retained jurisdiction over Burlington fares, the granting of an injunction was nevertheless improper.

The Illinois Commerce Commission contends it has never claimed jurisdiction against a valid and effective purchase of service agreement; the circuit court lacks jurisdiction because RTA failed to take the available legal remedy; and when a public utility terminates its RTA relationship, that utility is under exclusive jurisdiction of the Utilities Act.

RTA asserts the trial court was correct in granting the preliminary injunction because the RTA Act grants the RTA exclusive jurisdiction over fares within the RTA system. RTA maintains Burlington's written request for a new agreement and RTA's tender of a draft agreement effectively retained Burlington within the RTA system.

The RTA Act vests in the RTA exclusive authority to set and regulate fares charged and services offered for all transportation agencies within the RTA system. First, the Act provides the setting of fares to be charged is a precondition for any transportation agency to receive RTA funding (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 702.04):

> "Whenever the Authority [RTA] provides any public transportation pursuant to grants made after June 30, 1975, to transportation agencies for operating expenses * * * or pursuant to any purchase of service agreement, the purchase of service agreement or grant contract shall provide for the level and nature of fares or charges to be made for such services * * *."

Second, the RTA Act exempts the RTA and any transportation agency under its purview from the jurisdiction of the Public Utilities Act and the ICC (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 702.06(c)):

> "The Authority shall not be subject to 'An Act concerning public utilities', * * *. Transportation agencies which have any purchase of service agreement with the Authority shall not be subject to that Act as to any public transportation which is the subject of such

agreement. No contract or agreement entered into by any transportation agency with the Authority shall be subject to approval of or regulation by the Illinois Commerce Commission."

Therefore, if some contractual relationship between RTA and Burlington was still in effect after July 1, 1981, the ICC had no jurisdiction to determine the fares to be charged by Burlington, and Burlington had no authority to charge fares not specifically approved by RTA.

■■ The RTA Act prescribes specific requirements by which a legal relationship between the RTA and the various transportation agencies is established (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 702.02(c)):

"The Authority shall, within 180 days after receiving a written request from a transportation agency * * *, tender and offer to enter into with such transportation agency a purchase of service agreement * * *."

The above statutory requirement was satisfied by Burlington's written request for a new agreement dated July 7, 1980, and the subsequent tender of an agreement of RTA. Although the tender of the purchase of service agreement by RTA on March 31, 1981, was beyond the statutory 180 days from the date of the written request by Burlington, the parties agreed to extend the deadline to April 1, 1981. Therefore, the tender of the agreement by RTA was timely.

Section 2.02(c) of the RTA Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 702.02(c)) provides:

"If, following such a request and tender, the Authority and the transportation agency do not agree upon the amount of compensation to be provided to the agency by the Authority under the purchase of service agreement or fares and charges under the purchase of service agreement, either of them may submit such unresolved issues to the Illinois Commerce Commission for determination. The Commission shall determine the unresolved issues in conformity with this Act. * * * [The agreement shall be] effective as of July 1, 1975, or, if the agreement is requested to succeed a currently effective or recently expired purchase of service agreement between the parties, as of the date of such expiration. The decision of the Commission shall be binding upon the Authority and the transportation agency, * * *."

■■ Since the cause came on to be heard on a motion for preliminary injunction upon the complaint filed by RTA and the answer filed by Burlington, the trial court did not and could not attempt to determine all of the factual and legal issues presented by this record. The trial court could determine these issues only after a full trial on the merits. The only issues before the trial court and now before this court pertain to the legal propriety of issuance of the preliminary injunction. They are whether

RTA has shown a likelihood of success on the merits (see *Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B Graphic Arts International Union* (1976), 63 Ill. 2d 514, 524, 349 N.E.2d 36), the inadequacy of a remedy at law, and probability of irreparable harm if the preliminary injunction should be denied. *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 712, 390 N.E.2d 68.

"The decision to grant a preliminary injunction rests within the sound discretion of the trial court." (*Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 712, citing *Stocker Hinge Mfg. Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 643, 377 N.E.2d 1125, *appeal denied* (1978), 71 Ill. 2d 615.) The role of the reviewing court is restricted to a determination of whether the trial court acted within its broad discretionary powers in granting the preliminary injunction. (*Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 712, citing *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414, *appeal denied* (1975), 60 Ill. 2d 602.) In our opinion, RTA has sustained its burden of proof, and the preliminary injunction was properly entered.

The RTA Act imposes certain obligations even in the absence of a finalized purchase of service agreement. For example, the RTA must tender an agreement upon request of a transportation agency, the statute provides for binding arbitration at the request of either party, and the Act specifies such service agreements will be effective retroactively from the expiration date of a previous agreement. Therefore, Burlington and RTA may be legally associated despite the lack of a formal agreement, especially where the parties are currently in the midst of contract negotiations, and where Burlington has never explicitly severed its ties to RTA.

If this court were to accept the reasoning of Burlington that a transportation agency is never bound in the absence of a final and formal contract, we would allow these various agencies to "shop" between the RTA and ICC and decide at the last minute which of these public agencies offered the most advantageous package. Such an outcome would work substantial instability upon the area's transportation network, and would be contrary to the legislative purpose of the RTA to provide a public transportation system "which is attractive and economical to users, comprehensive, coordinated among its various elements, economical, safe, efficient and coordinated with area and State plans." Ill. Rev. Stat. 1979, ch. 111 2/3, par. 701.02(b).

In addition, RTA did not have an adequate legal remedy. The ICC argues that by failing to appeal the ICC decision directly as provided under the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 72), RTA did not exhaust administrative remedies, and it is therefore precluded from seeking equitable relief. We disagree.

■■ The supreme court has determined a party need not exhaust the remedies provided in a statute where an administrative rule or order is challenged on its face as not legally authorized. (*City of Chicago v. Illinois Commerce Com.* (1980), 79 Ill. 2d 213, 217, 402 N.E.2d 595, and cases there cited.) In the case at bar, RTA is raising an issue regarding the jurisdiction of the ICC to approve the fares charged by Burlington. In thus challenging the jurisdiction and therefore the authority of the ICC, RTA is not required to exhaust the administrative remedies provided in the Public Utilities Act. See *Illini Coach Co. v. Illinois Commerce Com.* (1951), 408 Ill. 104, 110, 96 N.E.2d 518; *Colton v. Commonwealth Edison Co.* (1953), 349 Ill. App. 490, 498, 111 N.E.2d 363, *appeal denied* (1953), 415 Ill. 631.

■■ RTA was also successful in establishing the probability of irreparable injury if the status quo were not preserved. If Burlington charged fares not approved by RTA, RTA would be impaired in its function of coordinating fares and services of the metropolitan transportation system. The variation in fares could convince people to change their means of transportation. As carefully pointed out by the able trial court, "[s]tability of ridership during negotiations for subsidies is essential to the overall and proper functioning of the RTA Act."

The following additional arguments advanced by Burlington are rejected for the reasons stated:

The law imposes no set form for a proper verification. (*Boner v. Drazek* (1973), 55 Ill. 2d 279, 291, 302 N.E.2d 280.) In the case at bar, we hold the complaint and attendant verification were amply sufficient. The complaint consisted of undisputed and general legal conclusions based on those facts. The facts alleged in the complaint were within the personal knowledge of the party verifying the complaint, and the verification itself was unequivocal. We note also the verification of the complaint was identical to the verification of the verified answer filed by Burlington.

■■ In any event, the pertinent statute requires a verified complaint as a prerequisite to issuance of a preliminary injunction only when the application is made "without previous notice." (Ill. Rev. Stat. 1979, ch. 69, par. 3. See also *County of Lake v. X-Po Security Police Service, Inc.* (1975), 27 Ill. App. 3d 750, 755-56, 327 N.E.2d 96.) In the case at bar, previous notice of the application for injunction was served.

■■ In our opinion, the preliminary injunction effectively preserves the status quo. The status quo is "the last, actual, peaceable, uncontested status which preceded the pending controversy." (*Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 481, 368 N.E.2d 990.) Before the injunction was issued on June 29, Burlington was under legal obligation to charge only fares authorized by RTA. The injunction merely secures that status until the case can be tried on its merits.

■■ We now address Burlington's contentions regarding RTA's breach of contract and Federal law. We do not believe any breach of contract on the part of RTA would constitute unclean hands, so as to preclude its right to seek equitable relief. Burlington concedes any breach by RTA has resulted from its inability to pay rather than a desire to default on its obligations. The unclean hands doctrine is concerned not so much with the effect of a party's conduct but with the intent with which acts were performed. (See *Barrett v. Carter* (1963), 39 Ill. App. 2d 400, 188 N.E.2d 736.) There does not appear to be any malicious intent on the part of RTA regarding any breach of contract. The application of the doctrine of unclean hands lies within the sound discretion of the trial court. (*Mascenic v. Anderson* (1977), 53 Ill. App. 3d 971, 972, 369 N.E.2d 172.) We find no abuse of discretion in the records before us.

■■ ■ The claims of breach of contract by RTA, and the violation of United States law and Constitution, are affirmative defenses which Burlington may raise in its trial on the merits, but which are not appropriate in the present interlocutory appeal. Constitutionality of statutes should not be decided on a motion for preliminary injunction. (*Toushin v. City of Chicago* (1974), 23 Ill. App. 3d 797, 803, 320 N.E.2d 202.) We therefore expressly refrain from resolving the ultimate substantive issues which are raised in the briefs of Burlington and the ICC but were not finally decided by the trial court. We have considered such issues only to the extent necessary to determine if the trial court acted within the bounds of its broad discretionary power to grant preliminary injunctions. *Toushin*, 23 Ill. App. 3d 797, 802; *Frederick Chusid & Co. v. Collins Tuttle & Co.* (1973), 10 Ill. App. 3d 818, 821, 295 N.E.2d 74.

The public interest involved in this case demands a prompt trial on the merits as we have already directed. The order for preliminary injunction is affirmed. The case is remanded for trial on the merits.

Order affirmed. Case remanded for trial.

McGLOON and O'CONNOR, JJ., concur.